The ARMUCHEE ALLIANCE, Plaintiff,

v.

Joe W. KING, et al., Defendants.

Civil Action No. 4:96–cv–35–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

April 18, 1996.

Howell Franklin Wright, Jr., Joseph Mendelson, III, phv, Dew & Smith, Monroe, GA, Donald E. Davis, nam, Calhoun, GA, Mark Burnett, nam, Dalton, GA, Denise L. Newton, Rocky Face, GA, Janis Walraven, Sugar Valley, GA, Andrew C. Kimbrell, phv, Dew & Smith, Monroe, GA, for plaintiff.

Robin Michael, Department of Justice, Environment & Natural Resources Div., U.S. Department of Justice, Washington, DC, for Joe W. King, Robert Joslin, Daniel Glickman, Jack Ward Thomas and George Martin.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff's Motion For Summary Judgment [10] and Defendants' Motion For Summary Judgment and Dismissal Of Plaintiff's Complaint [12].

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A district court "can only grant summary judgment 'if *everything* in the record ... demonstrates that no genuine issue of material fact exists.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980)).

It has long been established that the party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In assessing whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). Once the moving party has supported its motion adequately, the nonmovant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ryder Int'l Corp. v. First American Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). Rather, the court only determines whether there are genuine issues of *material* fact to be tried. Applicable substantive law identifies those facts that are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 ("[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). Disputed facts which do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment because such facts are not material. *Id.*

In addition to materiality, courts also must consider the genuineness of the alleged dispute. "[S]ummary judgment will not lie if the dispute about a material fact is '*genuine*.'" *Id.* (emphasis added). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248, 106 S.Ct. at 2510. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1355. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "[T]his standard mirrors the standard for a directed verdict." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "[T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

## II. Background

This case involves a challenge to the controversial Emergency Salvage Timber Sale Program, provided for in a rider to the Rescissions Act of 1995 (the "Salvage Timber Rider"). Pub.L. No. 104–19, § 2001, 109 Stat. 240–47 (1995). Plaintiff claims (1) Defendants violated express provisions of the Salvage Timber Rider; and (2) the Salvage Timber Rider is unconstitutional. Before discussing the merits of Plaintiff's case, the Court will outline relevant provisions of the Salvage Timber Rider, discuss the facts that led Plaintiff to file this suit and summarize the parties' arguments.

### A. Relevant Provisions Of The Salvage Timber Rider

(a) DEFINITIONS ...

(3) The term "salvage timber sale" means a timber sale for which an important reason for entry includes the removal of disease or insect-infested trees ... or trees imminently susceptible to fire or insect attack. Such term also includes the removal of associated trees or trees lacking the characteristics of a healthy or viable ecosystem.

§ 2001(a)(3).

(b) COMPLETION OF SALVAGE TIMBER SALES ...

Using the expedited procedures provided in subsection (c), the [Secretary of Agriculture] shall prepare, advertise, offer, and award contracts during the emergency period for salvage timber sales from Federal lands.... During the emergency period, the Secretary concerned is to achieve, to the maximum extent feasible, a salvage timber sale volume level above the programmed level to reduce the backlogged volume of salvage timber.

§ 2001(b)(1).

(c) EXPEDITED PROCEDURES FOR EMERGENCY SALVAGE TIMBER SALES—

(1) SALE DOCUMENTATION—

(A) PREPARATION—For each salvage timber sale conducted under subsection (b), the Secretary concerned shall prepare a document that combines an environmental assessment under section 102(2) of the National Environmental Policy Act of 1969 (including regulations implementing such section) and a biological evaluation under section 7(a)(2) of the Endangered Species Act of 1973 ((16 U.S.C. 1536(a)(2)) and other applicable Federal law and implementing regulations. A document embodying decisions relating to salvage timber sales proposed under authority of this section shall, at the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible, consider the environmental effects of the salvage timber sale and the effect, if any, on threatened or endangered species....

(B) USE OF EXISTING MATERIALS— In lieu of preparing a new document under this paragraph, the Secretary concerned may use a ... biological evaluation written before [July 27, 1995], or information collected for such a document or evaluation if the ... information applies to the Federal lands covered by the proposed sale.

(C) SCOPE AND CONTENT—The scope and content of the documentation and information prepared, considered, and relied

on under this paragraph is at the sole discretion of the Secretary concerned. § 2001(c)(1).

(f) JUDICIAL REVIEW—

(1) PLACE AND TIME OF FILING— ... Any challenge to such sale must be filed in such district court within 15 days after the date of initial advertisement of the challenged sale.

(2) EFFECT OF FILING ON AGENCY ACTION—For 45 days after the date of the filing of a challenge to a salvage timber sale to be conducted under subsection (b) ... the Secretary concerned shall take no action to award the challenged sale.

(3) PROHIBITION ON RESTRAINING ORDERS, PRELIMINARY INJUNCTIONS, AND RELIEF PENDING REVIEW—No restraining order, preliminary injunction, or injunction pending appeal shall be issued by any court of the United States with respect to any decision to prepare, advertise, offer, award, or operate a salvage timber sale....

(4) STANDARD OF REVIEW—The courts shall have authority to enjoin permanently, order modification of, or void an individual salvage timber sale if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i)).

(5) TIME FOR DECISION—Civil actions filed under this subsection shall be assigned for hearing at the earliest possible date. The Court shall render its final decision relative to any challenge within 45 days from the date such challenge is brought, unless the court determines that a longer period of time is required to satisfy the requirements of the United States Constitution.

§ 2001(f).

(i) EFFECT ON OTHER LAWS—The documents and procedures required by this section for the preparation, advertisement, offering, awarding, and operation of any salvage timber sale subject to subsection (b) ... shall be deemed to satisfy the requirements of [all applicable Federal environmental and natural resource laws].

§ 2001(i).

## B. Facts

On September 20, 1995, an aerial survey of the Armuchee Ranger District of the Chattahoochee National Forest ("the Forest") revealed numerous infestations of the Southern Pine Beetle. As a result, Dan Glickman, Secretary of Agriculture, Jack Ward Thomas, Chief of the U.S. Forest Service, George Martin, Supervisor of the Chattahoochee–Oconee Forest, Robert Joslin, Regional Forester, and Joe King, Armuchee District Ranger ("Defendants") decided to harvest and sell some of the infested and associated timber, pursuant to the provisions of the Salvage Timber Rider.

On September 22, 1995, Defendants sent a letter to interested members of the public, stating that a salvage timber sale was being planned. A.R. at Tab 16. Although the letter did not give the locations of planned timber removals, the letter discussed, in general terms, the procedure by which timber would be removed. *Id.*

On October 2, 1995, Defendants had a wildlife biologist prepare a Biological Evaluation "to document any potential effects of southern pine beetle (SPB) control on Proposed, Endangered, Threatened, and Sensitive (PETS) species and their habitats, and to ensure that land management decisions are made with the benefit of such knowledge." *See* A.R., Tab 19 at 1. This Biological Evaluation encompassed the compartments of the Forest from which Defendants plan to salvage and sale timber: Compartment 927 and Compartment 929. *Id.*

On October 3, 1995, Defendants sent another letter to members of the public, stating that 21 "spots" of infested timber would be removed through conventional logging methods. A.R. at Tab 20. The letter also stated that a buffer zone, measuring two-hundred feet, would be cut around each spot and that "small amounts" of temporary road construction would be necessary. *Id.*

Defendants plan to salvage and sell approximately eighty-three acres of timber

from Compartment 929. On January 19, 1996, Defendants completed a "Categorical Exclusion Environmental Analysis Worksheet" for Compartment 929. The analysis discussed (1) the need for the proposed timber sale; (2) possible alternatives to the proposed sale; (3) the environmental impact of the proposed sale and its alternatives; and (4) the agencies and persons consulted about the proposed sale. A.R. at Tab 32. Defendants completed a similar analysis for Compartment 927, where Defendants plan to harvest approximately twelve acres of timber. A.R. at Tab 44.

On January 19, 1996, Defendants sent a letter to interested members of the public, informing them of Defendants' decision to salvage and sell approximately 618,000 board feet of merchantable timber from Compartment 929. A.R. at Tab 34. The letter stated that, because less than one million board feet of timber would be salvaged, the salvage plan qualified for a "categorical exclusion." [1]

On February 6, 1996, Defendants sent a letter to interested members of the public, informing them of Defendants' decision to salvage and sell approximately 145,000 board feet of timber from Compartment 927. A.R. at Tab 46. This letter also stated that, because less than one million board feet of timber would be salvaged, the salvage plan qualified for a categorical exclusion.

Defendants published/advertised a notice of their intention to proceed with the salvage and sale of timber from Compartments 929 and 927 in the *Walker County Messenger*, on January 24, 1996 and February 9, 1996. A.R. at Tabs 41, 51. On February 9, 1996, Plaintiff initiated the present suit, seeking declaratory and injunctive relief.[2] Since the filing of Plaintiff's suit, Defendants have taken no action to carry out their salvage plans.

1. A "categorical exclusion" would allow Defendants to salvage timber without having to prepare an Environmental Assessment.

2. Plaintiff is an organization whose members frequently use and enjoy the specific Compartments of the Forest from which Defendants plan to salvage and sell timber. Plaintiff claims Defendants' proposed action will result in erosion, increased siltation of streams and lakes, and an overall reduction in the aesthetic quality of the

### C. Summary Of Parties' Arguments

Plaintiff makes six arguments to support its Motion For Summary Judgment. First, Plaintiff argues that, because Defendants have not prepared a document that combines an environmental assessment with a biological evaluation, Defendants have failed to comply with the express requirements of § 2001(c)(1)(a) of the Salvage Timber Rider. Plaintiff claims that, because the Salvage Timber Rider does not mention the availability of a categorical exemption, Defendants cannot be exempt from preparing such a document.

Second, Plaintiff argues that the Salvage Timber Rider is void because it is unconstitutionally vague. Third, Plaintiff argues that the Salvage Timber Rider violates Plaintiff's members' substantive and procedural due process rights. Fourth, Plaintiff argues that the Salvage Timber Rider violates equal protection. Fifth, Plaintiff argues that the Salvage Timber Rider violates Plaintiff's members' First Amendment right to petition the Government for redress of grievances. Sixth, Plaintiff argues that the Salvage Timber Rider violates the separation of powers.

In support of their Motion For Summary Judgment, Defendants note that they did, in fact, prepare environmental assessments and a biological evaluation of their plans to salvage and sell timber. Additionally, Defendants argue that § 2001(c)(1)(A) of the Salvage Timber Rider provides a categorical exemption for their salvage plans. Finally, Defendants argue that Plaintiff's "novel" constitutional arguments are without merit.

### III. Discussion

The Court will begin its discussion by addressing Plaintiff's constitutional claims. Next, the Court will address Plaintiff's claim

Forest. As a general matter, the Court believes Plaintiff has standing to bring this suit, although Plaintiff may not have standing to pursue certain individual claims contained within the suit (e.g. Plaintiff's void for vagueness claim). *See Seniors Civil Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1033 (11th Cir.1992) (holding that association may have standing as the representative of its members).

that Defendants failed to comply with the express requirements of § 2001(c)(1)(a) of the Salvage Timber Rider.

### A. Whether The Salvage Timber Rider Is Unconstitutional

### 1. Whether The Salvage Timber Rider Is "Void For Vagueness"

Plaintiff argues that the Salvage Timber Rider is unconstitutional because it is vague and incomprehensible.[3] Plaintiff claims "[d]ue process requires that the government provide meaningful standards to guide the application of its laws. . . . not only to laws that proscribe conduct, but also to laws that vest standardless discretion in an arm of the government." Plaintiff's Memo. In Support Of Motion For Summary Judgment at 15.

■ Typically, the void for vagueness doctrine is applied to penal or quasi-penal statutes. The doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" against those who must comply with the statute. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

■ A civil statute will be void for vagueness if the statute exacts obedience to a rule or standard that is " 'so vague and indefinite as really to be no rule or standard at all.' " *Seniors Civil Liberties Assoc'n v. Kemp,* 965 F.2d 1030, 1036 (11th Cir.1992) (quoting *Boutilier v. Immigration and Naturalization Service,* 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967)). The dual purpose of the void for vagueness doctrine is (1) to ensure that citizens are given actual, and understandable, notice of statutory requirements that apply to their conduct; and (2) to discourage the arbitrary and discriminatory enforcement of incomprehensible stat-

utes. *Kolender,* 461 U.S. at 357–358, 103 S.Ct. at 1858.

■ Because Plaintiff's members are not responsible for carrying out, or conforming with, the timber removal standards prescribed in the Salvage Timber Rider, Plaintiff lacks standing to pursue a claim under the void for vagueness doctrine. In short, Plaintiff has no need for the fair notice and guidance contemplated by the void for vagueness doctrine.[4] Accordingly, Defendants' Motion For Summary Judgment is granted as to Plaintiff's void for vagueness claim.

### 2. Whether The Salvage Timber Rider Violates The Due Process Components Of The Fifth Amendment

#### a. Substantive Due Process

Plaintiff argues that the Salvage Timber Rider infringes upon its members' fundamental, substantive due process, right to use the Forest for hiking, fishing, photography and etc. Defendants argue that Plaintiff's members have no fundamental, substantive due process, right to use the Forest. The Court believes Defendants have the better part of this argument.

■ "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.' " *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). "A finding that a right merits substantive due process protection means that the right is protected 'against certain government actions regardless of the fairness of the procedures used to implement them.' " *McKinney,* 20 F.3d at 1556 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 124, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)).

---

3. Plaintiff notes the Salvage Timber Rider fails to define such "vague" terms as "imminently susceptible to fire or insect attack" and "associated trees." Plaintiff's Memo. In Support Of Motion For Summary Judgment at 14.

4. The present case is distinguishable from the cases cited by Plaintiff. In the void for vagueness cases cited by Plaintiff, the plaintiffs actually were responsible for conforming with a challenged statute. Thus, the plaintiffs needed the fair warning/notice and guidance contemplated by the void for vagueness doctrine.

While it is true that the Supreme Court has extended substantive due process protection to certain rights not enumerated in the Constitution ...

the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires [Courts] to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins v. City of Harker Heights,* 503 U.S. 115, 124, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). Thus, substantive due process protection has been limited to such fundamental rights as the right of parents to direct the upbringing and education of their children, the right to marry, the right of families to live together, and etc.

■ Plaintiff has not cited, and the Court has not found, a single case supporting the proposition that citizens have a fundamental, substantive due process, right to unlimited use and enjoyment of national forests.[5] The Court, therefore, will not dilute the importance of existing substantive due process rights by "break[ing] new ground" and adopting Plaintiff's argument. *Collins,* 503 U.S. at 124, 112 S.Ct. at 1068. Accordingly, Defendants' Motion For Summary Judgment is granted as to Plaintiff's substantive due process claim.

**b. Procedural Due Process**

Plaintiff argues that the Salvage Timber Rider deprives its members of a property interest without first providing them the opportunity to be heard at a meaningful time. Plaintiff defines its members' property interest as the right to use the Forest for "hiking, hunting, fishing, photography, aesthetic enjoyment and other recreational and human occupancy activities." Plaintiff's Memo. In Opposition To Defendants' Motion For Summary Judgment at 12.

Plaintiff claims its members' property interest is created by language from three federal statutes: (1) the Fish and Wildlife Act of 1956, which recognizes an "inherent right of every citizen and resident of the United States to engage in fishing for his own pleasure, enjoyment, and betterment" 16 U.S.C.A. § 742a(3); (2) the Multiple–Use Sustained–Yield Act of 1960, which states "[i]t is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes" 16 U.S.C.A. § 528; and (3) the Federal Land Policy and Management Act of 1976, which states "Congress declares that it is the policy of the United States that ... the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental ... values; that, where appropriate, will preserve and protect certain public lands in their natural condition." 43 U.S.C.A. § 1701(a)(8).

Defendants argue that Plaintiff's members do not have a property interest in the Forest and that, in any event, the Salvage Timber Rider provides Plaintiff's members with an adequate opportunity to be heard.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. **He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.**

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added).[6]

Property interests arise from "existing rules or understandings that stem from an independent source ... rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709.

"[F]ederal laws can, by creating substantive entitlements to particular government

5. Even if Plaintiff's members have a fundamental right to use and enjoy the Forest, the Salvage Timber Rider does not deprive them of that right. *See* discussion *infra* part III.A.2(b) (concluding the Salvage Timber Rider does not prevent citizens from using the national forests).

6. The Court does not believe Congress would create a liberty/property interest in the national forests via the broad and generalized statutory language cited by Plaintiff.

benefits, lead to the constitutional protection of those benefits as 'liberty' or 'property' interests." *Jean v. Nelson,* 727 F.2d 957, 981 (11th Cir.1984), *aff'd,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). "However, when dispensation of a statutory benefit is clearly at the discretion of an agency," no cognizable liberty or property interest is created. *Id.*

■ Because Congress's power over public lands "is **without limitations**," any right to use and occupy national forests is strictly a statutory benefit. *Kleppe v. New Mexico,* 426 U.S. 529, 539, 96 S.Ct. 2285, 2291, 49 L.Ed.2d 34 (1976) (citations omitted) (emphasis added). The dispensation of this statutory benefit is clearly at the discretion of an agency—the Department of Agriculture. *See Elko County v. Glickman,* 909 F.Supp. 759, 764 (D.Nev.1995) (recognizing that Secretary of Agriculture has "considerable" power to regulate use and occupancy of national forests) (citing 16 U.S.C.A. § 551).

■ The Court, therefore, concludes that Plaintiff's members have no liberty/property interest in using or occupying the Forest. Their use of the Forest is a privilege, not a right. This conclusion is not altered by Plaintiff's citation of *Best v. Humboldt Mining Co.,* 371 U.S. 334, 335, 83 S.Ct. 379, 381, 9 L.Ed.2d 350 (1963) (holding that validity of mining claims on public land should be decided by agency Congress entrusted to make such decisions). *Best* is inapposite to the present case and does not support Plaintiff's position.[7]

■ Finally, even if Plaintiff's members possess the liberty/property interest they claim, the Salvage Timber Rider does not deprive them of that interest. The Salvage Timber Rider simply does not prevent Plaintiff's members from using the Forest for hiking, hunting, fishing, photography, etc. Accordingly, the Court grants Defendants' Motion For Summary Judgment as to Plaintiff's procedural due process claim.

### 3. Whether The Salvage Timber Rider Violates The Equal Protection Component Of The Fifth Amendment

Plaintiff argues that the Salvage Timber Rider violates the equal protection component of the Fifth Amendment, because it employs "unjustifiable and arbitrary ways to classify forests." Plaintiff's Memo. In Support Of Motion For Summary Judgment at 25. The Court agrees with Defendants that Plaintiff's argument demonstrates a fundamental misunderstanding of basic constitutional law.

■ Equal protection violations arise from unconstitutional classifications of **people.** An equal protection challenge cannot be based upon classifications of trees or forests. The Court, therefore, concludes that Defendants' Motion For Summary Judgment is granted as to Plaintiff's equal protection claim.

### 4. Whether The Salvage Timber Rider Violates Plaintiff's First Amendment Right To Petition The Government

■ It is well-established that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983). Because judicial access must be " 'adequate, effective, and meaningful'.... defendants need not literally bar the courthouse door or attack plaintiffs' witnesses" to create an unconstitutional denial of access. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984) (quoting *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977)).

Plaintiff argues that the Salvage Timber Rider violates its members' right to petition in two ways. First, Plaintiff claims the Salvage Timber Rider's 15–day filing limitation [8]

7. Cases in which plaintiffs have been found to possess property interests in public lands typically involve contractual agreements with the United States. *See, e.g., Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir.1994) (purchasers of timber from national forests have "legally protectable property interests in existing timber contracts").

8. Section 2001(f)(1) states that "[a]ny challenge to such sale must be filed in such district court

"prevents plaintiffs from obtaining all the necessary information, any expert witnesses and other materials necessary to present a cognizant complaint." Plaintiff's Memo. In Opposition To Defendants' Motion For Summary Judgment at 16–17.

Second, Plaintiff claims that, because the Salvage Timber Rider (A) prohibits courts from issuing preliminary injunctions and temporary restraining orders; and (B) provides only a 45–day automatic stay of proposed timber salvages, Defendants often will salvage timber before courts have time to address pending legal challenges. Defendants argue that the Salvage Timber Rider does not violate Plaintiff's right to petition, as evidenced by the present suit.

■■■ The Court believes the Salvage Timber Rider gives litigants adequate, effective and meaningful access to the courts. As to Plaintiff's first argument, the Court reminds Plaintiff that, under the Federal Rules of Civil Procedure, a complaint only has to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Court believes 15 days gives plaintiffs plenty of time to prepare such a short and plain statement of their claim.

As to Plaintiff's second argument, the Court notes that, in challenges to proposed salvage timber sales, evidence is limited to the administrative record. Thus, because plaintiffs do not have to engage in time consuming discovery, the Salvage Timber Rider's 45 day automatic stay gives plaintiffs adequate time to prepare and present challenges to proposed salvage timber sales.

Plaintiff claims Defendants can easily deprive litigants of meaningful access to the court by delaying the delivery of the administrative record for 45 days. Plaintiff's fear is not well-founded. If a plaintiff perceives that Defendants are engaging in such an obstruction of justice, the plaintiff can petition the court for a timely order, directing Defendants to immediately produce the administrative record.

within 15 days after the date of initial advertise-

Plaintiff also claims the Salvage Timber Rider allows Defendants to proceed with proposed timber sales before courts have time to rule on pending challenges. The Court believes plaintiffs can avoid this scenario by reminding courts, **when plaintiffs initially file their challenges,** that, under the Salvage Timber Rider, challenges must be ruled on within 45 days after their filing.

For reasons discussed above, the Court concludes that the Salvage Timber Rider does not deprive plaintiffs of the right to petition. Accordingly, Defendants' Motion For Summary Judgment is granted as to Plaintiff's right to petition/denial of access claim.

### 5. Whether The Salvage Timber Rider Violates The Separation Of Powers

Plaintiff argues that the Salvage Timber Rider violates the separation of powers in two ways. First, Plaintiff argues that it "prescribes a rule for the decision of a cause in a particular way" by ordering courts to find that "whatever actions" Defendants take automatically satisfy a "laundry list of natural resource laws." Plaintiff's Memo. In Support Of Motion For Summary Judgment at 28. Second, Plaintiff argues that, in passing the Salvage Timber Rider, Congress infringed upon the powers of the judiciary by expressly prohibiting courts from issuing temporary restraining orders, preliminary injunctions or injunctions pending appeal.

As to Plaintiff's first argument, the Court agrees with Defendants that the Salvage Timber Rider does not direct specific factual findings or results. To the contrary, the Salvage Timber Rider simply compels changes in existing laws by adding an additional method by which those laws may be satisfied. *Robertson v. Seattle Audubon Society,* 503 U.S. 429, 437–40, 112 S.Ct. 1407, 1412–14, 118 L.Ed.2d 73 (1992).

■■■ As to Plaintiff's second argument, the Court concludes that Congress does not violate the separation of powers by

ment of the challenged sale."

expressly limiting the kinds of remedies available to enforce a given statute. *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 70–71, 112 S.Ct. 1028, 1035, 117 L.Ed.2d 208 (1992) ("general rule, therefore, is that **absent clear direction to the contrary by Congress,** the federal courts have the power to award any appropriate relief"); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (comprehensiveness of courts' equitable jurisdiction not to be denied or limited **in absence of clear legislative command**).

Accordingly, the Court grants Defendants' Motion For Summary Judgment as to Plaintiff's separation of powers claim.

### B. Whether Defendants Failed To Comply With Express Provisions Of The Salvage Timber Rider

Section 2001(c)(1)(A) of the Salvage Timber Rider provides that:

> For each salvage timber sale conducted under subsection (b), the Secretary concerned shall prepare a document that combines an environmental assessment under section 102(2) of the National Environmental Policy Act of 1969 (including regulations implementing such section) and a biological evaluation under section 7(a)(2) of the Endangered Species Act of 1973 ((16 U.S.C. 1536(a)(2)) and other applicable Federal law and implementing regulations.

Plaintiff argues that, because Defendants have not prepared a document that combines an environmental assessment and a biological evaluation ("combination document") for each proposed timber sale, Defendants have failed to comply with section 2001(c)(1)(A). Defendants do not deny that they have failed to prepare a combination document for each sale.[9] Instead, Defendants claim the sales are categorically exempt from the documen-

tation requirement of section 2001(c)(1)(A). The Court agrees with Defendants on this issue.

The language of section 2001(c)(1)(A) indicates that, when Defendants are attempting to comply with section 2001(c)(1)(A), Defendants may look to the implementing regulations of the National Environmental Policy Act ("implementing regulations") for guidance. The implementing regulations provide that "neither an environmental assessment nor an environmental impact statement is required" for "actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency." 40 C.F.R. § 1508.4 (1995) (explaining categorical exemption).

 The Court, therefore, concludes that categorical exemptions are available for salvage timber sales proposed under the Salvage Timber Rider.[10] Additionally, the Court concludes that the timber sales in the present case are categorically exempt from the documentation requirements of section 2001(c)(1)(A).

Pursuant to the implementing regulations discussed above, the Forest Service has determined that, absent extraordinary circumstances, no environmental assessment is required for salvage timber sales involving less than one million board feet of merchantable timber and one mile or less of temporary road construction. *See* Forest Service Handbook at 31.2–4.

The salvage timber sales at issue in the present case involve less than one million board feet of merchantable timber and less than one mile of temporary road construction. Additionally, Defendants have determined that no extraordinary circumstances, such as a significant effect on the human

---

9. Defendants do, however, note that they have prepared environmental assessments and a biological evaluation of the proposed salvage timber sales. The environmental assessments and the biological evaluation were never combined into a single document.

10. This conclusion is supported by the very purpose of the Salvage Timber Rider: the speedy removal of "epidemic levels" of "dead and dying trees in National Forests." H.R. 124, 104th Cong., 1st Sess. (1995) (Conference Report).

environment, are presented by the proposed timber sales. A.R. at Tab 32, 46. Accordingly, Defendants' decision not to create the combination document referred to in section 2001(c)(1)(A) is not arbitrary, capricious or violative of applicable law. *See Southwest Center For Biological Diversity v. Dan Glickman,* Civ. No. 95–879 at 6 (D.Ariz. March 14, 1996) (holding that failure to prepare combination document is not *per se* violation of the Salvage Timber Rider).[11]

The Court, therefore, grants Defendants' Motion For Summary Judgment as to Plaintiff's claim that Defendants failed to comply with the express language of the Salvage Timber Rider.

## IV. Conclusion

ACCORDINGLY, the Court **DENIES** Plaintiff's Motion For Summary Judgment [10], **GRANTS** Defendants' Motion For Summary Judgment [12] and **DISMISSES** Plaintiff's case.

IT IS SO ORDERED.

---

11. Defendants were required to produce a biological evaluation only, which they did. *See* A.R. at Tab 19. The Court notes, however, that the "categorical exclusion environmental assessments" prepared by Defendants appear to satisfy the requirements of an environmental assessment prepared pursuant to the National Environmental Policy Act. *See* 40 C.F.R. § 1508.9

(1995) (defining the components of an environmental assessment). Thus, it appears to the Court that the only thing Defendants need to satisfy the combination document requirement of section 2001(c)(1)(a) is a staple or a gem clip to attach their biological evaluation to their environmental assessments.