## BEST ET AL. v. HUMBOLDT PLACER MINING CO. ET AL.

No. 52. Argued December 10, 1962.—Decided January 14, 1963.

*Roger P. Marquis* argued the cause for petitioners. With him on the brief were *Solicitor General Cox, Stephen J. Pollak* and *A. Donald Mileur.*

*Charles L. Gilmore* argued the cause and filed a brief for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The United States sued in the District Court to condemn certain property needed for the construction of the

Trinity River Dam and Reservoir in California,[1] to obtain immediate possession of it, and to secure title to it, the complaint asking that the United States be allowed to reserve authority to have the validity of mining claims determined in administrative proceedings before the Bureau of Land Management of the Department of the Interior. The District Court allowed the United States a writ of possession; but no other issues in the action have been determined. See 185 F. Supp. 290.

The United States later instituted a contest proceeding in the local land office of the Bureau seeking an administrative determination of the validity of respondents' mining claims [2] and alleged that the land embraced within respondents' claims is nonmineral in character and that minerals have not been found within the limits of the claims in sufficient quantities to constitute a valid discovery. Respondents, who had 30 days to answer the administrative complaint or have the allegations taken as confessed,[3] brought the present suit to enjoin the officials of the Department of the Interior from proceeding with the administrative action. The District Court granted summary judgment for the United States. 185 F. Supp. 290. The Court of Appeals reversed, 293 F. 2d 553. The case is here on a petition for certiorari which we granted. 368 U. S. 983.

We deal here with a unique form of property. A mining claim on public lands is a possessory interest in land that is "mineral in character" and as respects which discovery "within the limits of the claim" has been made. *Cameron* v. *United States,* 252 U. S. 450, 456. The discovery must be of such a character that "a person of

---

[1] See S. Doc. No. 113, 81st Cong., 1st Sess. 120, stating that the project will require 10,000 acres.

[2] See Appeals and Contests Regulation of the Bureau of Land Management, 43 CFR, 1962 Supp., § 221.67.

[3] *Id.,* § 221.64.

ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *Castle* v. *Womble,* 19 L. D. 455, 457; *Chrisman* v. *Miller,* 197 U. S. 313, 322; *Cameron* v. *United States, supra,* p. 459. A locator who does not carry his claim to patent does not lose his mineral claim, though he does take the risk that his claim will no longer support the issuance of a patent. *United States* v. *Houston,* 66 L. D. 161, 165. It must be shown before a patent issues that at the time of the application for patent "the claim is valuable for minerals," worked-out claims not qualifying. *United States* v. *Logomarcini,* 60 L. D. 371, 373.

Respondents' mining claims are unpatented, the title to the lands in controversy still being in the United States. The claims are, however, valid against the United States if there has been a discovery of mineral within the limits of the claim, if the lands are still mineral, and if other statutory requirements have been met.[4] *Cameron* v. *United States, supra.* The determination of the validity of claims against the public lands was entrusted to the General Land-Office in 1812 (2 Stat. 716) and transferred to the Department of the Interior on its creation in 1849. 9 Stat. 395.[5] Since that time, the Department has been granted plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them.[6] *Cameron* v. *United States, supra*—an opinion written by Mr. Justice Van Devanter, who, as Assistant Attorney General for the Interior Department from 1897 to 1903, did more than any other person to give character

[4] 30 U. S. C. §§ 21, 22, 26; General Mining Regulation of the Bureau of Land Management, 43 CFR §§ 185.1–185.3.

[5] See 5 U. S. C. § 485; 43 U. S. C. § 2.

[6] See 30 U. S. C. § 22, 43 U. S. C. § 1201.

and distinction to the administration of the public lands—illustrates the special role of the Department of the Interior in that field. Cameron claimed a valid mineral discovery on public lands. His claim was rejected in administrative proceedings. Cameron, however, would not vacate the land and the United States sued to oust him. The Court said:

"By general statutory provisions the execution of the laws regulating the acquisition of rights in the public lands and the general care of these lands is confided to the land department, as a special tribunal; and the Secretary of the Interior, as the head of the department, is charged with seeing that this authority is rightly exercised to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved. . . .

"A mining location which has not gone to patent is of no higher quality and no more immune from attack and investigation than are unpatented claims under the homestead and kindred laws. If valid, it gives to the claimant certain exclusive possessory rights, and so do homestead and desert claims. But no right arises from an invalid claim of any kind. All must conform to the law under which they are initiated; otherwise they work an unlawful private appropriation in derogation of the rights of the public.

"Of course, the land department has no power to strike down any claim arbitrarily, but so long as the legal title remains in the Government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void." 252 U. S. 450, 459–460.

"Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the Land Department." *Orchard* v. *Alexander,* 157 U. S. 372, 383. If a patent has not issued, controversies over the claims "should be solved by appeal to the land department and not to the courts." [7] *Brown* v. *Hitchcock,* 173 U. S. 473, 477. And see *Northern Pacific R. Co.* v. *McComas,* 250 U. S. 387, 392.

The Court of Appeals wrote nothing in derogation of these principles. It concluded, however, that since the United States went into the District Court to condemn these property interests and to get immediate possession, the validity of the claims was, of necessity, left to judicial determination. Its conclusion rested primarily on Rule 71A of the Federal Rules of Civil Procedure. That Rule, after describing the way in which the issue of compensation shall be determined, concludes with the sentence "Trial of all issues shall otherwise be by the court."

Yet courts that try issues sometimes wait until the administrative agency that has special competence in the field has ruled on them. The controversies within the Court over the appropriateness of that procedure in given situations is well known, though there is no dispute over the soundness of the *Abilene* doctrine, adumbrated by Chief Justice White in *Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426. It is difficult to imagine a more appropriate case for invocation of the jurisdiction of an administrative agency for determination of one of the issues involved in a judicial proceeding. Cf. *Thompson* v. *Magnolia Petroleum Co.,* 309 U. S. 478; *Thompson* v. *Texas Mexican R. Co.,* 328 U. S. 134, 146–151.

---

[7] Claimants today may appeal the Examiner's decision to the Director of the Bureau (43 CFR, 1962 Supp., § 221.1), from him to the Secretary (*id.,* § 221.31), and from there to the courts. *Foster* v. *Seaton,* 271 F. 2d 836.

Congress has entrusted the Department of the Interior with the management of the public domain and prescribed the process by which claims against the public domain may be perfected.[8] The United States, which holds legal title to the lands, plainly can prescribe the procedure which any claimant must follow to acquire rights in the public sector.

Respondents protest, saying that if they are remitted to the administrative proceeding, they will suffer disadvantages in that the procedures before the District Court are much less onerous on claimants than those before the Department of the Interior.[9] We express no views on those contentions, as each of them can appropriately be

---

[8] We are told that nine hearing Examiners are assigned to mining-claim cases, that mining claims comprise from 75% to 85% of their hearings, and that in the fiscal year 1960–1961, 322 mining-law cases (involving 1,162 separate claims) were brought before the hearing Examiners. Of these, 81 cases (343 claims) were closed on procedural grounds without a hearing; in 241 cases (involving 819 claims), hearings on the merits were held and decisions rendered by the hearing Examiner; in 90 of these cases, appeals were taken to the Director of the Bureau of Land Management.

In the fiscal year 1961 there were a total of 27,228 mining-claim adjudication cases closed during the year. These included 7,457 title-transfer cases (e. g., patent applications and land-disposition conflicts), and approximately 20,000 mining-claim investigations by the Bureau's mining engineers for the purpose of determining validity or invalidity. See Annual Report, Director, Bureau of Land Management, 1961, pt. 4, pp. 86–120 (Statistical Appendix).

[9] Respondents say (1) that in the District Court value would be determined as of the time of the taking, while before the agency value is determined as of the date of the hearing before the Examiner; (2) that the strictures on proof of "discovery" in the administrative proceedings are so great that they could not be satisfied unless the Trinity Basin Reservoir were drained; (3) that in the District Court value could be established by a showing of valuable deposits of gold, while before the Examiner a claim could be established only on proof that mines were actually operating at a profit.

raised in the administrative proceedings and reserved for judicial review.

The United States is not foreclosed from insisting on resort to the administrative proceedings for a determination of the validity of those claims. It may take property pursuant to its power of eminent domain, either by entering into physical possession of the property without a court order, or by instituting condemnation proceedings under various Acts of Congress. *United States* v. *Dow,* 357 U. S. 17, 21. Title to the property passes later, though the entry into possession marks the taking, gives rise to the claim for compensation, and fixes the date as of which the property is to be valued. *Id.,* p. 22. Institution of suit is one way to obtain immediate possession; and we see nothing incompatible between the use of that means to obtain possession and the use of the administrative proceedings to determine title. Cf. *United States* v. *93.970 Acres,* 360 U. S. 328. No purpose would be served by forcing the United States to abandon that orderly procedure in favor of physical seizure, leaving the claimant to a suit under the Tucker Act. See *United States* v. *Dow, supra,* p. 21.

We conclude that the institution of the suit in the District Court was an appropriate way of obtaining immediate possession, that it was not inconsistent with the administrative remedy for determining the validity of the mining claims, and that the District Court acted properly in holding its hand until the issue of the validity of the claims has been resolved by the agency entrusted by Congress with the task.

*Reversed.*