Nick J. HOLDEN and B.B. McMahen

v.

The UNITED STATES.

No. 96–547L.

United States Court of Federal Claims.

Filed Aug. 13, 1997.*

Reissued for Publication Sept. 17, 1997.

* This Opinion was filed unpublished on August 13, 1997. Thereafter, the defendant filed a Request for Publication. This request has now been al- lowed, and the Opinion ·is reissued for publication this date, September 17, 1997.

Nick J. Holden and B.B. McMahen, Waco, TX, plaintiffs pro se.

Marc A. Smith, Washington, DC, with whom was Assistant Attorney General Lois J. Schiffer. Joel Yudson, Office of Solicitor, United States Department of Interior, and Stephen A. Banks, Office of General Counsel, United States Department of the Navy, of counsel.

## OPINION

YOCK, Judge.

This taking action is before the Court on the Defendant's Motion to Dismiss, or, in the Alternative, for Partial Dismissal and a Stay of Proceedings pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). In their Complaint, the plaintiffs aver that the United States Navy (Navy) took their unpatented mining claims that were located on public land without just compensation in violation of the Fifth Amendment.

After a full and careful examination of the pleadings, briefs, and other submissions by the parties, the Court denies the defendant's motion to dismiss, but grants the defendant's motion for a partial dismissal and a stay of the proceedings.

### Factual Background

On January 24, 1991,[1] the Navy announced that, effective February 1, 1991, it was clos-

---

1. According to the Complaint, the Navy announced the closure on July 31, 1992, not January 24, 1991. However, a notice issued by the United States Department of Interior, Bureau of Land Management (BLM), supports the conclusion that the closure was announced on January 24, 1991, and was effective on February 1, 1991. See 56 Fed.Reg. 4074 (Feb. 1, 1991). According

ing land, which was within the Fairview Mining District near Fallon, Nevada, and adjacent to the Bravo-17 target range of the Fallon Naval Air Station (NAS) "to all public access to ensure public safety, until further notice" because of the possible presence of live ordnance from the target range. 56 Fed.Reg. 4074 (Feb. 1, 1991).[2] The plaintiffs, Nick J. Holden and B.B. McMahen (Holden and McMahen), are the holders of twenty-eight unpatented lode mining claims, which they located on public land in Churchill County, Nevada, on July 29, 1991, and recorded in the Churchill County records on July 31, 1991. The closed area encompasses fifteen of the plaintiffs' twenty-eight mining claims. The remaining thirteen mining claims are not within the closed area, but, according to the plaintiffs, are accessible only by using a road that traverses the closed area.

On August 29, 1996, the plaintiffs filed a petition with the BLM for a temporary deferment of annual assessment work and payment of the annual mining claim maintenance fees for their twenty-eight mining claims, which deferment was granted. On November 27, 1996, the deferment was extended from September 1, 1996, until September 1, 1997, in order to prevent undue degradation of the public lands. In addition, in that November 27, 1996 decision, Mr. Thomas V. Leshendok, the BLM's Deputy State Director for Mineral Resources for Nevada stated that "[t]his decision must *not* be construed as a determination either that a valid discovery has been made or, if made, contin-

ues to submit on any of the claims involved * * *." Ex. A at 2 (emphasis added).[3]

Also on August 29, 1996, the plaintiffs filed their Complaint in this Court against the United States, by and through the Department of the Defense, the Department of the Navy, and the Department of the Interior. In their Complaint, the plaintiffs allege that:

> they have been negligently and/or wrongfully denied access to the mineral claims which they own by Defendants' closure of this land. This action on the part of the United States Navy constitutes a taking of the Plaintiffs' valuable rights in such land without just compensation as required by the Fifth Amendment to the Constitution of the United States.

Compl. at 3. As a result of this taking, the plaintiffs seek $62,474,657 for the fair market value of their mineral rights and lost income,[4] as well as interest, costs, and other relief to which they may be entitled. In their Complaint, the plaintiffs do not allege that they requested a determination by the BLM as to the validity of their twenty-eight unpatented mining claims.

*Discussion*

A. Subject Matter Jurisdiction.

 This Court's subject matter jurisdiction is strictly construed. *Mega Constr. Co. v. United States*, 29 Fed. Cl. 396, 472 (1993). When the defendant puts this Court's subject matter jurisdiction into question via a motion pursuant to RCFC 12(b)(1), the burden is on the plaintiff to establish it

---

to the defendant, that July 1992 action was an application by the Navy to withdraw certain lands to act as a buffer zone around the Fallon Naval Air Station (NAS), which included the lands on which fifteen of the plaintiffs' claims were located. These lands still remain closed pursuant to the January 24, 1991 closure order. *See* Mot. to Dismiss at 3 n. 3; Decl. of Daniel L. Jacquet (Nov. 5, 1996) at 2. In addition, one of the plaintiffs agrees that "[t]he emergency closing of public lands * * * went into effect February 1, 1991 * * * which included 15 of my 28 claims." Aff. of Nick J. Holden at 3. In any event, the result is the same regardless of the exact date of the closure.

2. At the time that the defendant filed its motion to dismiss, the Bravo-17 range was still in active use.

3. All references to "Ex. __" refer to the plaintiffs' exhibits attached to their Response to Defendant's Motion to Dismiss or, in the Alternative, for Partial Dismissal and Stay of Proceedings dated February 24, 1997.

4. In their Complaint, the plaintiffs seek the fair market value of their mineral rights, as well as the reimbursement of lost income. However, consequential damages, such as lost income or profits, are not recoverable. *Oak Forest, Inc. v. United States*, 23 Cl.Ct. 90, 97 (1991). Therefore, the plaintiffs' prayer in their Complaint for lost income in the amount of $12,474,657 will be dismissed with prejudice.

by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *George W. Kane, Inc. v. United States*, 26 Cl.Ct. 655, 657 (1992); *American Pac. Roofing Co. v. United States*, 21 Cl.Ct. 265, 267 (1990). In deciding a motion to dismiss, this Court must accept all unchallenged factual allegations and draw all reasonable inferences in favor of the plaintiff. *George W. Kane, Inc.*, 26 Cl.Ct. at 657; *Kinne v. United States*, 21 Cl.Ct. 104, 107 (1990).

In its motion to dismiss, the defendant contends that this Court does not have subject matter jurisdiction over the plaintiffs' action because the "[p]laintiffs' unpatented mining claims have not been determined to be valid by the U.S. Department of the Interior, and hence do not constitute a compensable property interest." Mot. to Dismiss at 8. However, in their Complaint, the plaintiffs allege that the Navy took their valuable rights in the land without just compensation in violation of the Fifth Amendment. This Court has subject matter jurisdiction over claims brought under the taking clause of the Fifth Amendment. 28 U.S.C. § 1491(a)(1) (1994); *Flathead Joint Bd. of Control v. United States*, 30 Fed. Cl. 287, 293 (1993), aff'd, 59 F.3d 180 (Fed.Cir.1995). Therefore, the plaintiffs' claim is within the subject matter jurisdiction of this Court, and the defendant's motion to dismiss, pursuant to RCFC 12(b)(1), is denied.

### B. Failure To State A Claim Upon Which Relief Can Be Granted.

Additionally, this Court will not dismiss a complaint, pursuant to RCFC 12(b)(4), for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Because a motion to dismiss pursuant to RCFC 12(b)(4) is an adjudication on the merits, it is proper for the defendant to argue the merits of the plaintiff's claims. *Flathead Joint Bd. of Control*, 30 Fed. Cl. at 292. In addition, this

Court must assume that the unchallenged facts alleged in the Complaint are true and must resolve all reasonable inferences in favor of the plaintiff. *Davies Precision Machining, Inc. v. United States*, 35 Fed. Cl. 651, 662 (1996).

The defendant contends that the plaintiffs' taking claim fails to state a claim upon which relief can be granted because the plaintiffs' twenty-eight unpatented mining claims have not yet been determined to be valid by the BLM. In order to properly state a claim for a taking under the Fifth Amendment, a plaintiff must allege and establish his *ownership* in a compensable property interest. *Payne v. United States*, 31 Fed. Cl. 709, 710 (1994); *Plantation Landing Resort, Inc. v. United States*, 30 Fed. Cl. 63, 67 (1993), aff'd, 39 F.3d 1197 (Fed.Cir.1994), cert. denied, 514 U.S. 1095, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995); *Flathead Joint Bd. of Control*, 30 Fed. Cl. at 293; *Oak Forest, Inc.*, 23 Cl.Ct. at 94. Thus, in this case, the plaintiffs must establish a compensable interest in their unpatented mining claims that were alleged to have been taken. *See Payne*, 31 Fed. Cl. at 711.

#### 1. Fifteen Unpatented Mining Claims Located Within The Closed Area.

To have a compensable interest in unpatented mining claims sufficient to bring a taking action in this Court, there must have been a determination as to the *validity* of those mining claims. *See Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 339, 83 S.Ct. 379, 383–84, 9 L.Ed.2d 350 (1963); *Cameron v. United States*, 252 U.S. 450, 459–60, 40 S.Ct. 410, 412, 64 L.Ed. 659 (1920); *Freese (Andrew L.)*, 221 Ct.Cl. 963, 964, 1979 WL 10420 (1979); *Payne*, 31 Fed. Cl. at 711; *Hafen v. United States*, 30 Fed. Cl. 470, 473 (1994), aff'd, 47 F.3d 1183 (Fed.Cir.1995); *Bayshore Resources Co. v. United States*, 2 Cl.Ct. 625, 628 (1983). The determination of the validity of such claims is entrusted to the BLM. *Id.* Moreover, "[a] mining claim does not create any rights against the United States and is not valid unless and until all requirements of the mining laws have been satisfied." *Skaw v. United States*, 13 Cl.Ct. 7, 28 (1987), aff'd, 847 F.2d 842 (Fed.Cir.),

*cert. denied,* 488 U.S. 854, 109 S.Ct. 141, 102 L.Ed.2d 113 (1988).

This Court previously has addressed the exact issue that is pending before this Court in the plaintiffs' current action; namely, whether or not the closure of lands on which the plaintiffs' unpatented mining claims were located constituted a taking without just compensation in violation of the Fifth Amendment. *See Payne,* 31 Fed. Cl. at 710. As in this case, the defendant in *Payne* moved to dismiss or stay the action on the grounds that the BLM had not made a determination as to the validity of the plaintiff's claims. *Id.* In *Payne,* the Court denied the defendant's motion to dismiss, but granted its motion to stay the action until the BLM had determined whether or not the plaintiff's mining claims were valid. *Id.* at 712. Specifically, the Court stated that:

> Congress has given the Department of Interior the power in the first instance to inquire into the validity of mining rights claimed against the Government. *See Cameron,* 252 U.S. at 461, 40 S.Ct. at 412–13 * * *
>
> * * * *
>
> Absent a concession by the Government that the claims are valid, * * * a validity determination has to be made before plaintiffs could recover. *Id.* at 711–12.

▮ While they do not allege in their Complaint that they requested a determination by the BLM as to the validity of their unpatented mining claims, the plaintiffs allege in their response to the defendant's motion to dismiss that they have exhausted all of their administrative remedies in that they repeatedly called the Department of the Interior to determine the validity of their fifteen unpatented mining claims and that they were assured by the BLM that the claims were good and valid. However, according to Daniel L. Jacquet, who is the BLM's Acting Assistant District Manager for Non–Renewable Resources of the Carson City District, Nevada, "[n]othing in BLM's records show either that plaintiffs Holden and McMahen have ever requested that BLM determine the validity of these claims, or that BLM has ever assured the plaintiffs that the claims were proper and valid."

Decl. of Daniel L. Jacquet (Mar. 21, 1997) at 1. In addition, the plaintiffs contend that the BLM's November 27, 1996 granting of a temporary deferment constituted evidence of the validity of their fifteen unpatented mining claims. However, that decision clearly states that it was not to be construed as a determination of validity. This Court is not required to take the plaintiffs' assertions as to the validity of their mining claims as true in the absence of a determination by the BLM. *See Payne,* 31 Fed. Cl. at 711.

▮ Because the plaintiffs have never requested that the BLM determine the validity of their mining claims, their taking action does not rely on any determination that they have a compensable interest in the unpatented mining claims. Without a determination as to the validity of the plaintiffs' unpatented mining claims, those mining claims do not constitute a compensable property interest, and, therefore, the plaintiffs cannot recover in this Court under a taking theory. *See Payne,* 31 Fed. Cl. at 712. Therefore, the plaintiffs, at this point, have not properly stated a claim for relief under the Fifth Amendment, and this case could be dismissed on that basis. Nevertheless, a stay of the proceedings in this case is warranted until the BLM has determined the validity of the plaintiffs' mining claims, and the parties have complied with all of the administrative procedures related to that determination. *See Best,* 371 U.S. at 338–40, 83 S.Ct. at 383–84 (upholding the district court's granting of a stay of the proceedings until the BLM could determine the validity of the plaintiff's mining claims); *Payne,* 31 Fed. Cl. at 712; *Skaw,* 13 Cl.Ct. at 10 (finding that a stay was granted to permit the Secretary of the Interior to determine the validity of the plaintiffs' mining claims). Thus, for the foregoing reasons, the plaintiffs' claim for a taking of their fifteen unpatented mining claims that are located within the closed area will be stayed pending a determination as to their validity by the BLM and any subsequent administrative review.

### 2. Thirteen Unpatented Mining Claims Located Outside of the Closed Area.

In addition, the plaintiffs' taking claim relating to the thirteen unpatented mining

claims outside of the closed area fail to state a claim upon which relief can be granted for a further reason. The plaintiffs contend that the Government's closure of a road prevented the plaintiffs from gaining access to their property interests and, therefore, constituted a taking. The defendant contends that the plaintiffs' taking claim as to the thirteen mining claims not within the closed area must be dismissed for failure to state a claim because the plaintiffs have no interest in the road that was closed, and, in any event, there was other available access to the thirteen unpatented mining claims located outside of the closed area. To bring a taking action, a plaintiff must establish ownership of a compensable property interest at the time of the alleged taking. *Oak Forest, Inc.*, 23 Cl.Ct. at 94. In this case, the plaintiffs cannot recover for the closure of the road under a taking theory unless they can establish some property interest in the road itself or in the right to use that road to gain access to their unpatented mining claims.

 It is an essential element of a taking claim that the plaintiff have an ownership interest in the property alleged to have been taken. *See Applegate v. United States,* 35 Fed. Cl. 406, 420 (1996). Public roads or highways are not like private property because there is no private gain or advantage involved. As a result, members of the public have no proprietary interest in the road and cannot sue for a taking when a road is closed, even though the closure causes them inconvenience or financial hardship. *County of Sarpy, Neb. v. United States,* 181 Ct.Cl. 666, 673, 386 F.2d 453, 457 (1967) (finding that when the Federal Government closed a public highway, the local governmental unit charged with the responsibility over the highway, not the private person using it, has a sufficient property interest to maintain a taking action). In this case, the plaintiffs have not alleged and, for that matter, cannot demonstrate any ownership of a compensable property interest in the road that was closed.

 Although the plaintiffs have no property interest in the road, a taking can occur where the Government destroys a plaintiff's interest in the use and enjoyment of its property. *767 Third Ave., Assocs. v.*

*United States,* 30 Fed. Cl. 216, 219 (1993), *aff'd,* 48 F.3d 1575 (Fed.Cir.1995); *Oak Forest, Inc.,* 23 Cl.Ct. at 97. In such a case, the Government does not physically occupy the property but controls access to the property through its lawful powers. *Id.* However, "[l]egitimate government action which impairs the market value of real property ordinarily does not amount to a taking." *B.W. Parkway Assocs. Ltd. P'ship v. United States,* 29 Fed. Cl. 669, 679 (1993), *aff'd,* 36 F.3d 1116 (Fed.Cir.1994), *cert. denied,* 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995); *see also Althaus v. United States,* 7 Cl.Ct. 688, 693 (1985) (finding that mere diminution in value does not constitute a taking).

In this case, the defendant never took possession of, or closed, the land on which the thirteen mining claims were located. More importantly, the plaintiffs were never denied access to their thirteen mining claims by the closure of the road. Although one road was closed, there are and remain other ways for the plaintiffs to gain access to their mining claims. *See generally* 43 C.F.R. § 3809 (1996). While the plaintiffs contend in their Complaint that the Navy promised but never provided them access, the plaintiffs simply have never notified, or sought permission from, the BLM to gain access to the thirteen mining claims. *See id.; 767 Third Ave. Assocs.,* 30 Fed. Cl. at 222. As the plaintiffs' own exhibit demonstrates, the Navy did not promise to provide them an alternate access route but stated that it was "seeking alternate access to the Fairview Mining District which would provide safe passage. If a reasonable route can be found, *the Navy will request that you [the plaintiffs] provide BLM with a notice of intent to construct a road.*" Ex. G (emphasis added). Clearly, the onus was on the plaintiffs to notify the BLM in accordance with the regulations.

This case does not involve the situation where the Government closed the land across which was the *only* possible access route to the plaintiffs' mining claims. *See Drakes Bay Land Co. v. United States,* 191 Ct.Cl. 389, 399–404, 424 F.2d 574, 579–82 (1970). To the contrary, the plaintiffs do not allege that the BLM blocked *all* access to their mining claims. As this Court has previously

found, "[t]he fact that other access routes are available to plaintiff precludes any finding that a taking occurred here." *Mesa Ranch P'ship v. United States*, 2 Cl.Ct. 700, 709 (1983); *see also B.W. Parkway Assocs. Ltd. P'ship*, 29 Fed. Cl. at 681. The BLM's closure of the road leading to the plaintiffs' thirteen mining claims did not impede or impermissibly restrict the plaintiffs' access.

Moreover, the plaintiffs cannot assert that they ever had the right to use the road at issue to gain access to their thirteen mining claims, because the plaintiffs located their claims *after* the road was closed. Also, there is no federal statutory or regulatory requirement that mandates that the Federal Government provide access roads to individuals with unpatented mining claims. According to the defendant's declaration, "[l]ack of access is not unique to the subject claim area as numerous unpatented claims in Nevada have no access road leading to them." Decl. of Daniel L. Jacquet (Nov. 5, 1996) at 3.

■ Finally, in asserting a taking claim, the plaintiffs had a duty to mitigate their damages. *See 767 Third Ave. Assocs. v. United States*, 48 F.3d 1575, 1578 (Fed.Cir. 1995); *Shelden v. United States*, 34 Fed. Cl. 355, 373 (1995). The defendant attempted to provide the plaintiffs with ways in which to mitigate by giving to the BLM a notice of the disturbance of any land on which they sought to locate an access route, *see* 43 C.F.R. § 3809.1–3, or a proposed plan of operations, *see* 43 C.F.R. § 3809.1–4.[5] The plaintiffs are entitled to access to their mining operations consistent with the provisions of the mining laws. *See* 43 C.F.R. § 3809.3–3. Based on the suggested alternatives to gain access to their mining claims, this Court cannot find that the closing of the road denied the plaintiffs of all access to their thirteen mining claims or of all economically beneficial or productive use of their mining claims. *See*

*Plantation Landing Resort, Inc.*, 30 Fed. Cl. at 69; *B.W. Parkway Assocs. Ltd. P'ship*, 29 Fed. Cl. at 679. The BLM was well within its rights to order the road closed due to the presence of live ordnance in that area. The plaintiffs have failed to demonstrate that access to their mining claims was denied, and, therefore, the closure of the road did not constitute a compensable taking. The defendant's motion to dismiss for failure to state a claim is granted as to the plaintiffs' thirteen unpatented mining claims located outside of the closed area, and that portion of the plaintiffs' Complaint is to be dismissed.[6]

## CONCLUSION

For the foregoing reasons, this Court denies the defendant's motion to dismiss, pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction. However, this Court does grant the defendant's motion for a stay of proceedings, pending a determination as to the validity of the plaintiffs' fifteen unpatented mining claims that are located within the closed area. In addition, this Court grants the defendant's motion for a partial dismissal, pursuant to RCFC 12(b)(4), as to the thirteen unpatented mining claims that are located outside of the closed area. There being no just reason for delay, the clerk of the Court is directed to enter judgment accordingly.

Regarding, the fifteen unpatented mining claims located within the closed area, within sixty days of the date of this Opinion, the plaintiffs are hereby ordered to file a copy of their request to the BLM for a validity determination with this Court and to serve a copy on the defendant's counsel. The filing of a copy of their request will serve as proof that the plaintiffs have begun the administrative process to determine if their claims are valid and that they intend to cooperate in the ensuing administrative process. Finally, the

5. This would indicate that the plaintiffs have not exhausted their administrative remedies, and, thus, their taking claim on the 13 unpatented mining claims are additionally not ripe for adjudication in this Court.

6. Although the unchallenged facts before this Court make it clear that the plaintiffs have not been deprived of all access to their 13 unpatented mining claims on the nonclosed land, it

should also be noted that even if the plaintiffs were to have a valid taking claim based on deprivation of all access, they would still need to have a validity determination made as to those unpatented claims before this Court could proceed with the taking adjudication, as is the case of the plaintiffs' 15 mining claims in the closed area that, by this decision, are now stayed.

defendant is directed to file a status report as to the progress of the plaintiffs' request with the BLM every 90 days thereafter in order to advise this Court of the current status of the validity determination and any contest, hearing, or appeal in the administrative process.

Each party is to bear its own costs.

