**Michael R. WARE, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–866–L.

United States Court of Federal Claims.

Sept. 25, 2003.

Michael R. Ware, pro se, Jacksonville, Oregon.

David W. Spohr, Trial Attorney, United States Department of Justice, Environmental & Natural Resources Division, General Litigation Section, c/o NOAA Damage Assessment, Seattle, Washington.

## OPINION AND ORDER

LETTOW, Judge.

In this case, plaintiff, Mr. Ware ("Ware"), seeks just compensation and other relief for an alleged taking by the Department of the Interior ("Interior") of mining claims Ware had filed under the Mining Law of 1872, 30 U.S.C. §§ 21–54. Before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rules of the Court of Federal Claims ("RCFC") 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). In the complaint dated April 30, 2003, as subsequently amended by motion and court order, Ware seeks an award of damages and lost property value resulting from a decision by Interior, invalidating his mining claims. Ware also requests that the Court review the decision made by Interior nullifying his claims and issue a declaration that the claims are valid, coupled with an order restoring his position as owner of the claims. The motion has been fully briefed by the parties, and a hearing on

the motion was conducted on September 16, 2003. For the reasons that follow, the Court grants defendant's motion on jurisdictional grounds.

## BACKGROUND

This case concerns four mining claims located near Jacksonville, Oregon—one placer mining claim named "Little Brother" and three lode mining claims named "Britt," "Rock–n–Roll," and "Weesau." Compl. ¶ 1.[1] Jacksonville, Oregon is in the southwestern part of the state, near Medford and roughly 60 miles southwest of Crater Lake. The claims collectively encompassed seventy acres of land straddling the city limits of Jacksonville. Hr'g Tr. at 21–22. Mr. Ware located and claimed "Britt," "Rock–n–Roll," and "Little Brother" in March 1980 and "Weesau" in June 1985. Compl. ¶ 2.

In March of 1987, the Bureau of Land Management ("BLM") within the Department of the Interior issued contest complaints asserting that the quantities of minerals on the claims were insufficient to constitute a valid discovery. Compl. ¶ 2; *United States v. Ware*, 113 IBLA 1, 2 (1990). At a hearing before an Administrative Law Judge ("ALJ") in September 1987, a BLM geologist testified that he had visited the claims along with a BLM forester in October 1985, that Mr. Ware had been present, and that the geologist had examined the claims and had taken mineral samples at points designated by Mr. Ware. *United States v. Ware*, 113 IBLA at 2. Mr. Ware contends that he was absent during the initial portion of the mineral examiner's inspection and that some samples were taken by the examiner in his absence. Hr'g Tr. at 25. This dis-

---

1. The facts and circumstances of the case have been drawn from the Complaint, which recites and describes orders issued in earlier federal judicial proceedings between the same parties and decisions issued by the Interior Board of Land Appeals ("IBLA") and an administrative law judge. Jurisdictional facts have been put at issue, and in that respect the Court has not restricted itself to the face of the pleadings. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.

1993), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Caldwell v. United States*, 57 Fed.Cl. 193, 197 (2003). Rather, on the jurisdictional issues, the Court has received extrinsic materials from the parties and conducted a hearing at which Ware provided a further elaboration of the written materials that had been submitted. The evidentiary materials considered by the Court regarding jurisdiction are identified with particularity in the discussion that follows.

pute is not material to the pending motion. Upon assay analysis of the samples, gold, silver, and heavy metals were shown to be present but in non-commercial quantities. Def. Ex. A (Opinion by ALJ Morehouse dated November 17, 1987 (hereafter "ALJ Op.")) at 2–3. The area in which the claims were located is "an old mining area where there has been extensive placer mining in the past." *Id.* at 2. Mr. Ware and three other witnesses testified about Mr. Ware's work to explore and develop the claims and recover gold and silver from them. 113 IBLA at 2–3. The ALJ issued an opinion on November 17, 1987, in which Mr. Ware's claims were found to be invalid due to a lack of discovery of valuable minerals that would justify mining by a prudent person. ALJ Op. at 3–4. All four claims were "declared null and void." *Id.* at 4. Mr. Ware appealed the decision to the Interior Board of Land Appeals ("IBLA"), which affirmed the ALJ's decision on January 25, 1990. 113 IBLA at 1.

On a *pro se* basis, Mr. Ware filed a petition for review with the United States Court of Appeals for the Ninth Circuit. Compl. ¶ 4. However, the Ninth Circuit dismissed the petition for lack of jurisdiction and instructed Mr. Ware to consult with an attorney as to the proper forum for his action. *Id.* He engaged an attorney, who on July 25, 1990, filed a complaint styled a petition seeking review of Interior's determination in the United States District Court for the District of Oregon. *Id.;* Def. Ex. C (Petition for Review of Order of Interior Board of Land Appeals, *Ware v. United States,* No. 90–6312–JO (D. Or. filed July 25, 1990)). This complaint was dismissed by the district court on November 26, 1990, for failure to make proper and timely service upon the United States. *Ware* (D. Or. Nov. 20 and 26, 1990) (Order and Judgment).

Mr. Ware alleges that neither he nor his attorney received notice of the district court's dismissal of his complaint until two years ago. Compl. ¶ 4; Hr'g Tr. at 34. Mr. Ware avers that during this period, he contacted his attorney "every year" requesting information about the status of his case. Hr'g Tr. at 34. On April 7, 2003, Mr. Ware filed a Motion for Relief from Order and Judgment in the district court, invoking Fed.R.Civ.P. 60 to set aside that court's 1990 dismissal of his case. Motion for Relief from Order and Judgment, *Ware* (D. Or. filed Apr. 21, 2003). The district court denied his motion on May 15, 2003. *Ware* (D.Or. May 15, 2003) (Minute Order).

Again acting on a *pro se* basis, Mr. Ware filed his complaint in this Court on April 30, 2003.

## STANDARD FOR DECISION

In considering a motion to dismiss, this Court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Turntable Fishery & Moorage Corp. v. United States,* 52 Fed.Cl. 256, 259 (2002); *Holden v. United States,* 38 Fed.Cl. 732, 735 (1997). The plaintiff nonetheless bears the burden of establishing jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Bond v. United States,* 43 Fed.Cl. 346, 348 (1999).

This Court has historically given "significant leeway" to *pro se* plaintiffs. *Hafen v. United States,* 30 Fed.Cl. 470, 473 (1994). *See also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ("pro se complaint . . . h[e]ld to less stringent standards than formal pleadings proffered by lawyers"). Accordingly, the Court has endeavored to give Mr. Ware the widest possible latitude and consideration. He was granted leave to file a surreply to supplement his opposition to the government's motion to dismiss, and in and with that filing Ware presented additional factual materials to support his jurisdictional contentions. Further factual matters were addressed by Ware during the hearing held on September 16, 2003.

## JURISDICTION

■ In essence, this is a takings case in which Mr. Ware seeks compensation for the

value of his mining claims. The jurisdiction of this Court to hear such a case is premised upon the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides that

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This grant of jurisdiction is not a license to review the determination by the IBLA. Rather, in this Court, as a general proposition, Mr. Ware must accept the result of the adjudicative process provided by the Department of Interior:

> Such an adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by a court of competent jurisdiction. There-

fore, without a previous test of validity under the Administrative Procedures Act, the correctness of the administrative action must be taken as a given in this Tucker Act suit.

*Aulston v. United States*, 823 F.2d 510, 513 (1987) (quoting *Aulston v. United States*, 11 Cl.Ct. 58, 62 (1986)). *See also Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1366 (Fed.Cir.1998).[2]

Mr. Ware properly sought review of the IBLA determination in the U.S. District Court for the District of Oregon, which had jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and the federal question statute, 28 U.S.C. § 1331, to consider his contentions that the IBLA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[3] When Ware's district court action was dismissed for failure to effect timely and valid service of process, *see supra* at 784, Ware lost his right to obtain review of Interior's action.[4] There-

---

**2.** Mr. Ware's reliance on *Del–Rio* as authority for this Court to review the IBLA decision is misplaced. In *Del–Rio*, Interior had required Del–Rio to obtain rights of way over tribal land to reach property on which Del–Rio held oil and gas leases. In the absence of such rights of way, Interior had denied Del–Rio's application for permits to drill or survey the land covered by the leases. The Federal Circuit held that Del–Rio could maintain its takings action in this Court notwithstanding the *Aulston* line of precedents ruling that this Court had to accept as valid an agency action that constituted the basis of a takings claim. Those cases were distinguished on the ground that in them the claimants' underlying property rights were the direct subject of the agency adjudication:

> [A]ll of the cases on which *Aulston* was based involved mining claims in which the Department of the Interior was charged with the responsibility of determining the validity of mining claims on public property. Likewise, in *Aulston* itself the agency action that the plaintiff challenged was an explicit adjudication of the scope of the Aulstons' property rights, which the court characterized as binding on the Aulstons unless overturned by a court of competent jurisdiction. 823 F.2d at 513. In that setting, the court held, the agency's adjudication of property rights could only be reviewed by a district court under the APA; it was not subject to collateral attack in a Tucker Act suit brought in the Claims Court. *Id.*

146 F.3d at 1366. In *Del–Rio*, by contrast, Interior's administrative decision requiring tribal

consent did not turn on the property rights conveyed to Del–Rio by the oil and gas leases. Consequently, Del–Rio could rely on its property rights in asserting a takings claim but still contest the need for a tribal grant of a right-of-way. *Id.* at 1366–67.

**3.** In contrast to the district court, this Court has no power under the APA to review the type of agency action at issue here. The entitlement to judicial review embodied in the Administrative Procedure Act is limited by statute to actions "seeking relief *other than* money damages." 5 U.S.C. § 702 (emphasis added). Moreover, the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2). It has been consistently held that this Court's principal jurisdictional statute, the Tucker Act, 28 U.S.C. § 1491, does not provide jurisdiction under the APA. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997); *Hoffman v. United States*, 57 Fed.Cl. 253, 258 (2003). Although this Court has "greater freedom than is enjoyed by other federal courts to inquire into the legality of governmental action," that freedom arises only in the context of "jurisdiction to award damages, not specific relief." *Glidden Co. v. Zdanok*, 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

**4.** That right cannot be resurrected by suit in this Court. As the Federal Circuit stated in *Aulston*, "[f]or this court to undertake a review of the validity of the claims declared void by the Interi-

after, he could only proceed in this Court based on the premise that his taking allegations would suffice even accepting Interior's decision.

■ The IBLA decision forecloses Ware's suit in this Court. A mining claim is "a possessory interest in land that is 'mineral in character' where discovery 'within the limits of the claim' ha[s] been made." *Hafen v. United States*, 30 Fed.Cl. 470, 473 (1994) (citing *Cameron v. United States*, 252 U.S. 450, 456, 40 S.Ct. 410, 64 L.Ed. 659 (1920)), *aff'd*, 47 F.3d 1183 (Fed.Cir.1995). "The established test to determine validity of a mining claim is that it must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine.'" *Hafen*, 30 Fed.Cl. at 473 (quoting *Chrisman v. Miller*, 197 U.S. 313, 322, 25 S.Ct. 468, 49 L.Ed. 770 (1905)). The determination of validity has been placed by Congress in the hands of the Department of the Interior. "If a mining claim is found to be valid, the claimant gains certain exclusive possessory rights. No right, however, arises from an invalid claim of any kind." *Hafen*, 30 Fed.Cl. at 473 (citing *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 335, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963)). Thus, once Interior determined that Mr. Ware's mining claims were invalid, he lost any rights to the property and concomitantly lost the right to assert a taking. *See Aulston*, 823 F.2d at 514. *See also Conti v. United States*, 291 F.3d 1334, 1339 (Fed.Cir.2002) ("First, [in analyzing a takings claim] a court must evaluate whether the claimant has established a 'property interest' for purposes of the Fifth Amendment."). In these circumstances, this Court lacks subject matter jurisdiction over Ware's taking action based on nullification of his mining claims. *See Aulston*, 823 F.2d at 514; *Holden*, 38 Fed.Cl. at 738; *Hafen*, 30 Fed.Cl. at 474.

## DUE PROCESS

■ Mr. Ware also contends that he was improperly denied access to his claims prior to the Interior decisions. Compl. ¶ 8. This contention was ventilated in the administrative proceedings. *See Ware*, 113 IBLA at 7. By law, BLM may not deny mining claimants access across public lands to their claims. 43 U.S.C. § 1732(b). However, IBLA concluded that any hindrance arose respecting land that was controlled by Southern Oregon University, not BLM, and that in any event Ware had not been denied access via other routes. 113 IBLA at 7 n. 5. This issue could have been pursued in the review action filed in district court. In other circumstances, a denial of access could also provide grounds for a takings claim in this Court.[5] In this instance, it does not provide an independent basis for this Court's jurisdiction. To the extent Ware relies on the Due Process Clause of the Fifth Amendment in raising this issue, this Court lacks jurisdictional power; a due process violation does not create an independent cause of action for money damages. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987).[6]

## STATUTE OF LIMITATIONS

In moving to dismiss, the government also contends that the six-year statute of limita-

---

or Department would be to assume a function lodged elsewhere by Congress and never contemplated for this court." 823 F.2d at 514 (quoting *Freese v. United States*, 221 Ct.Cl. 963, 964–65, 1979 WL 10420 (1979)).

5. Where the government closed *all* access to a mining claim, that fact might provide a basis for a takings cause of action. *See Drakes Bay Land Co. v. United States*, 191 Ct.Cl. 389, 399–404, 424 F.2d 574, 579–82 (1970). The availability of an access route can preclude a takings finding. *See Holden*, 38 Fed.Cl. at 737–38.

6. Similarly, any tort claim would be unavailing in this Court because of the express exclusion in the Tucker Act of jurisdiction in this Court to hear tort claims. *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997); *Newby v. United States*, 57 Fed.Cl. 283, 293 (2003). Likewise precluded are Ware's requests that his ownership and possession of the mining claims be restored. This Court does not have jurisdiction to grant "specific relief, namely the recovery of identified property and monies, an action that is equitable in nature and sharply distinguishable from an action at law for damages." *Crocker v. United States*, 125 F.3d at 1477 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893–901, 904–905, 108 S.Ct. 2722, 101 L.Ed.2d 749 n. 40 (1988) (explaining that a district court may grant specific relief but that the Claims Court under the Tucker Act had no jurisdiction to do so)).

tions specified in 28 U.S.C. § 2501 constitutes a bar to this Court's exercise of jurisdiction. If accepted, this contention would constitute an alternative ground for decision by this Court. It will be considered by the Court on this basis, particularly because in this Court Section 2501 is "jurisdictional in nature, and as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart v. United States,* 910 F.2d 815, 818–19 (Fed.Cir.1990). *See also Bowen v. United States,* 49 Fed.Cl. 673, 675 (2001). The jurisdictional aspects of a timeliness issue in this Court support addressing it as a "threshold inquiry" in connection with a motion to dismiss. *Bowen,* 49 Fed.Cl. at 675.

"A claim first accrues and the six year statute of limitations begins to run when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Hart,* 910 F.2d at 817 (internal citations and quotes omitted). *See also Bayou des Familles Dev. Corp. v. United States,* 130 F.3d 1034, 1038 (Fed.Cir.1997); *Simmons v. United States,* 53 Fed.Cl. 131, 133 (2002). When a plaintiff alleges a taking without just compensation in contravention of the Fifth Amendment to the Constitution, "[t]he Supreme Court has stated the general rule to be that a case is ripe when there has been a final decision regarding the application of the challenged regulations to the property at issue from the government[al] entity charged with implementing the regulations." *Bayou,* 130 F.3d at 1038 (internal quotations omitted, citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).

■ Ware's claim first accrued on January 25, 1990, when the IBLA affirmed the ALJ decision invalidating his mining claims. IBLA's affirmance was a final agency action respecting the application of Interior's regulations and the federal mining laws, and Ware's cause of action accrued upon the issuance of the decision. *See Aulston,* 823 F.2d at 513; *Hafen,* 30 Fed.Cl. at 474 ("[T]he IBLA decision exhausts plaintiff's remedies and constitutes a final agency decision."). Accordingly, absent grounds for tolling or suspending the statute of limitations, Ware was required to bring his suit by January 1996.

Ware has put forward two arguments why the intervening years should not count against him and he should be allowed to maintain this action. First, Ware contends he did not receive notice of the district court's dismissal of his original complaint for review until sometime within the last two years. Compl. ¶ 4; Hr'g Tr. at 34. When Ware's claim accrued in January 1990, however, it did so for purposes of his ability to file both in the district court and in this Court. This Court has explained the options available to a takings claimant in the face of an adverse agency determination:

> A property owner aggrieved by a federal government permit denial has two distinct avenues of judicial recourse available. That owner may bring a claim in district court challenging the denial on the merits. By such a claim, a property owner seeks reversal of the denial.... Alternatively, that owner may bring a takings claim here, seeking not reversal of the [decision], but rather compensation for it.

*Cristina Inv. Corp. v. United States,* 40 Fed. Cl. 571, 578 (1998) (internal footnotes and citations omitted). The statute of limitations does not stop running for one forum when the claimant chooses another. *See Loveladies Harbor v. United States,* 27 F.3d 1545 (Fed.Cir.1994) (cases filed in district court and Court of Federal Claims presented different "claims" even when based on same operative facts if they sought different relief). In *Aulston* the Court of Appeals for the Federal Circuit specifically noted that the pendency of a district court challenge could not suspend the statute of limitations and, to preserve that plaintiff's claim, ordered the Claims Court to suspend a case rather than dismiss it. 823 F.2d at 514–515. Ware's notice or lack of notice of the disposition of his case by the district court is irrelevant to the determination of when his claim accrued for purposes of this Court's statute of limitations. Similarly, Ware's renewed filing this year in the district court of a motion for relief from judgment could have no effect on the accrual of his claim before this Court.

Second, Ware asserted in his Opposition to Defendant's Motion that he has suffered from "anxiety and paranoia problems" that should toll the statute of limitations. Opp. at 4, 6–7. The statute of limitations contains an explicit tolling provision. *See* 28 U.S.C. § 2501 ¶ 3 ("A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases."). Ware relies on this tolling provision and asserts that he was under legal disability at the time his claim accrued and for a considerable period thereafter. Ware elaborated on this issue in his surreply, providing a "psychodiagnostic evaluation" by Dr. Michael F. O'Connell, Clinical Psychologist, on December 22, 1992, and a statement from the Social Security Administration advising that Ware has been eligible for SSI Disability payments since August 1992. Surreply, Exs. B and C. Ware also provided an unsigned affidavit written by himself stating that he "was in no condition to bring a takings case to the above named court during the period between January of 1990 to January of 2002" but is now able to litigate the matter due to new medication. *Id.*, Ex. D. During the hearing held on September 16, 2003, he confirmed the basic elements of these written submissions. Hr'g Tr. at 37–40. In this Court, factual issues respecting tolling may be addressed in connection with a motion to dismiss on jurisdictional grounds. *See Bond v. United States*, 43 Fed.Cl. at 348–350.

■ Plaintiff has a high hurdle to toll the statute of limitations on the basis of a legal disability. To rise to the level of a legal disability for purposes of tolling the statute of limitations, a plaintiff's mental illness must be acute and extreme—it must render the plaintiff "incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Goewey v. United States*, 222 Ct.Cl. 104, 112, 612 F.2d 539, 544 (1979). Furthermore, a plaintiff must show that his disability existed at the time when the claim accrued rather

than arising some time thereafter and that he suffered from the disability continually during the period in which the statute is to be tolled. *See Bond*, 43 Fed.Cl. at 349 ("[T]o avoid his claim from being barred, plaintiff must prove that he suffered from a legal disability when the claim accrued, and that the disability was continuous until a point within three years of the filing of [his] complaint."); *Leeth v. United States*, 22 Cl.Ct. 467, 484 (1991); *Waldorf v. United States*, 8 Cl.Ct. 321, 324–325 (1985).

■ Ware has not overcome these obstacles. First, the materials submitted by Ware do not support a determination that the mental illness he suffered rose to the level required to constitute a legal disability for purposes of tolling the statute. Rather than being unable to see to his own affairs and lacking comprehension of his legal rights and liabilities in 1990, Ware filed a petition *pro se* before the Court of Appeals for the Ninth Circuit, and he subsequently hired an attorney and filed a complaint seeking review by the District Court for the District of Oregon. Such actions taken to preserve or advance a plaintiff's interests have been held to evince a lack of legal disability for tolling purposes. *See Waldorf*, 8 Cl.Ct. at 324–325. Second, most of Ware's evidence of the severity of his illness consists of his affidavit and statements that he became "anxious and distraught" about Interior's decision. Surreply, Ex. D; Hr'g Tr. at 37–40. The Court accepts Ware's evidence on this point but concludes that his illness was not so severe that it constituted a "legal disability" within the meaning of this statute. Moreover, the evaluation by Dr. O'Connell was conducted in December 1992 and does not provide a basis for finding that Ware had suffered from a debilitating mental illness for the preceding two years. Finally, Ware's evidence does not reflect a continual suffering over the twelve-year period from 1990 to 2002, the period encompassed by his affidavit and hearing statements, but rather it indicates that his illness has at times been ameliorated by medication.[7]

---

7. Ware indicated during the hearing that his current medication is more effective than that

which previously had been prescribed for him. Hr'g Tr. at 40.

Because any cause of action Ware might have had arose in 1990 and because Ware cannot toll the statute of limitations, Section 2501 constitutes a jurisdictional bar to his suit.

## CONCLUSION

Based upon the complete record before the Court, and providing Ware every benefit of the doubt and giving full consideration to his *pro se* status, the Court finds that there is no basis for subject matter jurisdiction in this Court to consider the claims that Ware has raised. Therefore, the Court GRANTS defendant's motion to dismiss. The Clerk's Office is directed to enter judgment dismissing the case. No costs.

IT IS SO ORDERED.