# In the United States Court of Federal Claims

## No. 11-884L

### (Filed April 4, 2013)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
REOFORCE, INC. and                          *
THEODORE SIMONSON,                          *
                                            *
            Plaintiffs,                     *
    v.                                      *
                                            *
THE UNITED STATES,                          *
                                            *
            Defendant.                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Richard Meritt Stephens*, Groen Stephens & Klinge LLP, Bellevue, Washington, attorney of record for plaintiffs.

*William James Shapiro*, Department of Justice, Environmental and Natural Resources Division, with whom was *Ignacia S. Moreno Assistant Attorney General* for Defendant, and *Nancy Zahedi*, Of Counsel, Department of the Interior.

## OPINION & ORDER

*Futey,* **Judge**.

Presently before the Court is plaintiffs' "Motion for Partial Summary Judgment On United States' Sixth Affirmative Defense." This motion presents the question whether the settlement and dismissal of an administrative contest challenging the validity of plaintiffs' unpatented mining claims precludes the Government from now arguing that plaintiffs lack a compensable property interest in those claims, as set forth in the Government's sixth affirmative defense. The outcome is significant for the course of trial, as plaintiffs may only recover on their taking claim upon a showing that they possess a compensable property interest protected by the Fifth Amendment.

I.    Background[1]

The scope of plaintiffs' motion is narrow, so a brief recitation of the relevant facts will suffice. This case concerns the unpatented mining claims of plaintiffs Theodore Simonson and his company, Reoforce Inc. ("Reoforce") in Kern County, California. Plaintiffs planned to mine pumicite on their unpatented mining claims, and in 1987 the Bureau of Land Management ("BLM") gave its approval to mine the claims, which it expanded in 1992.

In October 1994, Congress passed the California Desert Protection Act, which provided for the transfer of BLM-managed public lands to the State of California for inclusion in Red Rock Canyon State Park. BLM issued a patent to the State of California, but California transferred the land back to the United States via quitclaim deed. The Department of the Interior ("DOI") published a notice of proposed withdrawal, segregating the public lands and preventing the establishment of new mining claims. In August 1995, BLM entered a Memorandum of Understanding ("MOU") with the State of California Department of Parks and Recreation regarding the treatment of mining claims.

The MOU provided that the BLM would conduct validity examinations to determine whether or not claimants had valid existing rights to carry out desired mining activities. In 2006, BLM finalized a mineral report concluding that plaintiffs' mining claims were not valid. The Department of the Interior ("DOI") instituted contest CACA 48717 on February 8, 2007, seeking to have plaintiffs' claims declared null and void. The contest alleged that no discovery of a valuable mineral had been made within the limits of plaintiffs' claims because (1) the pumicite was not actually or prospectively marketable on the date of the initial segregation through the present (on twenty-three of the mining claims), (2) that minerals were not found or exposed in sufficient quantities and/or qualities to constitute a valid discovery of a valuable mineral deposit (on twenty-one of the claims), and (3) that the mineral material was a common variety mineral and therefore not valuable under Section 3 of the Act of July 23, 1955 (two claims). *See* 30 U.S.C. § 601 *et seq.* The contest proceeding included thirteen days of evidentiary hearing before the Administrative Law Judge ("ALJ") before the parties settled the dispute.

By the terms of the settlement agreement, plaintiffs agreed to relinquish rights to twenty of the claims, and were allowed to mine their three principal claims, 6A, 7A, and 22A under their approved plan of operations. Pl.'s Ex. 1 at 3-4. The settlement agreement provided plaintiffs could mine for a period of twenty years, with the option to renew the agreement for an additional twenty-year period. *Id.* at 4. It also set out certain terms under which BLM could terminate the settlement agreement if plaintiffs violated its conditions, *ie.* plaintiffs did not commence mining within two years of the execution of the agreement, mining was not "substantial and continuous" during the first twenty-year period, or was

---

[1] Unless otherwise indicated, facts are taken from the parties' statements of undisputed facts.

discontinued for a period of one year. *Id.* at 3-4. The ALJ granted the parties' joint motion to dismiss the contest on May 19, 2008, attaching the settlement agreement "which serve[ed] to resolve all of the issues on appeal in this docket." Pl.'s Ex. 6.

Plaintiffs filed their claim in this Court for a temporary taking on December 19, 2011. The Government originally sought to dismiss the case on statute of limitation grounds, arguing that plaintiffs' claim accrued in 1995 when the BLM allegedly first placed restrictions on their property. The Court denied the motion to dismiss, finding the claim accrued in 2006, upon the completion of the mineral examination regarding the validity of plaintiffs' mining claims. In response to the complaint, the Government filed its answer, including its sixth affirmative defense, that plaintiffs lack a compensable property interest to pursue their claim. The parties next cross-moved for partial summary judgment as to the relevant time period for damages, and the Court denied both motions, finding issues of material fact existed. On reconsideration, the Court found for plaintiff as to the applicable time period to evaluate damages, and determined that when the parties argue the *Penn Central* analysis on the merits at trial, the earlier 1995 date of the MOU is a proper starting point from which to evaluate any damages.

## II.     Discussion

The Fifth Amendment protects private property from government interference. U.S. Const. amend V. A compensable interest in property is an essential element of a takings claim, and only persons with a valid property interest at the time of the taking are entitled to compensation. *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005); *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004); *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001); *Payne v. United States*, 31 Fed. Cl. 709, 710-11 (1994). Plaintiffs seek a determination that they have established this property interest as a matter of law.

### A.     Standard of Review

A movant is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." United States Court of Federal Claims Rule 56(a). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In reviewing motions for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *Sec. Bank & Trust Co. v. United States*, 26 Cl. Ct. 693, 695 (1992). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Cane Tenn., Inc. v. United States*, 54 Fed. Cl. 100, 104 (2002).

3

B.     Mining Law and Administrative Contests

A general background of mining law is helpful in understanding the nature of plaintiffs' claims in this case. Under the General Mining Law of 1872, 30 U.S.C. §§ 21–54, to encourage private development of mineral deposits, miners have limited rights for prospecting and mining valuable mineral deposits on federal land. 30 U.S.C. § 22 (2011) ("[A]ll valuable mineral deposits in lands belonging to the United States . . . shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States . . . under regulations prescribed by law . . . . "); *Kunkes v. United States*, 78 F.3d 1549, 1550-51 (Fed. Cir. 1996). Further, the Mining Law permits the location[2] of valuable mineral deposits on the United States' public land. *See* 30 U.S.C. § 26 (2011) ("The locators of all mining locations made on any mineral vein, lode, or ledge, situated on the public domain . . . so long as they comply with the laws of the United States . . . shall have the exclusive right of possession and enjoyment . . . ."). Thus, federal law permits private parties to acquire exclusive possessory interests in federal land for mining purposes, which entitle claim holders to extract and sell minerals without paying royalties to the Government. *Kunkes*, 78 F.3d at 1551 (citing *United States v. Locke*, 471 U.S. 84, 86, 105 S. Ct. 1785, 85 L. Ed. 2d 64 (1985)); *Cook v. United States*, 85 Fed. Cl. 820, 823 (2009), *aff'd*, 368 F. App'x 143 (Fed. Cir. 2010); *Freese v. United States*, 226 Ct. Cl. 252, 253 (Fed. Cl. 1981).

These possessory interests are "unpatented" claims and give the owner equitable title, as opposed to "patented" claims, in which a private owner has obtained an official document from the United States, bestowing full legal title. *Kunkes v. United States*, 32 Fed. Cl. 249, 252 (1994) ("Although legal title remains in the United States, the claimant enjoys a valid, equitable title in the claim, possessing all of the incidents of real property."), *aff'd*, 78 F.3d 1549 (Fed. Cir. 1996); *Ford v. United States*, 101 Fed. Cl. 234, 238 n.6 (2011) ("An unpatented mining claim is an interest in only the minerals in the land and not in the land's surface; the government retains fee title to the land."), *appeal dismissed*, 463 F. App'x 926 (Fed. Cir. 2012); *McKown v. United States*, 1:09-CV-00810-SKO, 2012 WL 5423863, at *1 (E.D. Cal. Nov. 5, 2012).

For an unpatented mining claim to be valid against the United States, there must be a discovery of valuable mineral deposit within the limits of the claim, and all statutory requirements must be met. *See* 30 U.S.C. § 22 (2011); *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336, 83 S. Ct. 379, 9 L. Ed. 2d 350 (1963); *Cameron v. United States*, 252 U.S. 450, 456, 40 S. Ct. 410, 64 L. Ed. 659 (1920). As phrased by the Supreme Court, to make a claim valid, or to invest the locator with a right to the possession, it is required that the land "be mineral in

---

[2] Location is a means of giving notice: staking the corners of the claim, posting on the land, and following state law for recording the location in the county recorder's office. *Freese v. United States*, 226 Ct. Cl. 252, 253 (1981).

character and that there be an adequate mineral discovery within the limits of the claim as located." *Cameron*, 252 U.S. at 460; *Davis v. Nelson*, 329 F.2d 840, 846 (9th Cir. 1964) ("[V]alidity of [ ] title . . . depends upon the resolution of a question of fact, that is, has there been a discovery of valuable mineral within the limits of the claim?"); *Foster v. Seaton*, 271 F.2d 836, 838 (D.C. Cir. 1959). No rights arise from an invalid claim. *Skaw v. United States*, 13 Cl. Ct. 7, 28 (1987) ("A mining claim does not create any rights against the United States and is not valid unless and until all requirements of the mining laws have been satisfied."), *aff'd*, 847 F.2d 842 (Fed. Cir. 1988); *Ford*, 101 Fed. Cl. at 238 n.6 ("Mining claims are valid against the government only if certain statutory and regulatory requirements have been met."); *United States v. Shumway*, 199 F.3d 1093, 1101-02 (9th Cir. 1999) ("[N]o right arose from an invalid claim."). Once a valuable mineral deposit has been located, the unpatented mining claim "is a property right in the full sense, unaffected by the fact that the paramount title to the land is in the United States." *Union Oil Co. of Cal. v. Smith*, 249 U.S. 337, 349, 39 S. Ct. 308, 63 L. Ed. 635 (1919); *Skaw v. United States*, 13 Cl. Ct. at 29 (declaring claims "real property in the highest sense"). This constitutes a property interest "which is within the protection of the Fifth Amendment's prohibition against the taking of private property for public use without just compensation." *Skaw v. United States*, 740 F.2d 932, 936 (Fed. Cir. 1984) (citations omitted).

The Secretary of the Interior has the authority to recognize valid claims, eliminate invalid claims, and preserve the rights of the public. *See* 43 U.S.C. § 1457 (2011); *Cameron*, 252 U.S. at 460; *Hafen v. United States*, 30 Fed. Cl. 470, 473 (1994), *aff'd*, 47 F.3d 1183 (Fed. Cir. 1995); *Bayshore Res. Co., Inc. v. United States*, 2 Ct. Cl.. 625, 628 (1983) (citing *United States v. Coleman*, 390 U.S. 599, 600 n.1, 88 S. Ct. 1327, 20 L. Ed. 2d 170 (1968)). This does not include the power to strike down any claim arbitrarily, *United States v. Shumway*, 199 F.3d at 1103 ("[Owner] is not a mere social guest of the Department of the Interior to be shooed out the door when the Department chooses."), but so long as the legal title remains in the Government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void. *See Cameron*, 252 U.S. at 460; *Swanson v. Babbitt*, 3 F.3d 1348, 1354 (9th Cir. 1993). If a valuable mineral deposit exists, it is incumbent upon the claimant to discover it; the Government mineral examiner simply verifies, if feasible, whether the claimant has, in fact, found a valuable mineral deposit. *Skaw*, 13 Cl. Ct. at 29 (citing *United States v. Ramsey*, 14 IBLA 152 (1974); *United States v. Woolsey*, 13 IBLA 120 (1973)). The determination of the validity of such claims is entrusted to the BLM, *Holden v. United States*, 38 Fed. Cl. 732, 735 (1997), and the Secretary has discretion in selecting an appropriate method to test the validity. *N. Alaska Envtl. Ctr. v. Lujan*, 872 F.2d 901, 905 (9th Cir. 1989).

Prior to validity proceedings, unpatented claims are more accurately characterized as potential property interests, since it is the discovery of a valuable mineral deposit which bestows the full rights described by the Supreme Court

upon them. *See Ickes v. Underwood*, 141 F.2d 546, 548 (D.C. Cir. 1944) (until there has been a determination that there has been a valuable discovery, claimants had only a gratuity from the United States); *see also Payne v. United States*, 31 Fed. Cl. 709, 711 (1994) (rejecting plaintiff's argument that in the absence of a challenge to validity, the court must take at face value their assertion that claims are supported by an adequate mineral discovery). To have a compensable interest in unpatented mining claims sufficient to bring a taking action in this Court, there must have been a determination as to the validity of those mining claims. *See Ford*, 101 Fed. Cl. at 238 (finding without BLM determination, plaintiff could not establish a valid property interest in the surface of his unpatented mining claim); *Hall v. United States*, 84 Fed. Cl. 463, 470-71 (2008) (granting request for a stay to afford BLM the opportunity to provide its validity opinion); *Bush v. United States*, 58 Fed. Cl. 123, 125 (2003); *Holden*, 38 Fed. Cl. at 735; *Payne*, 31 Fed. Cl. at 711-12 ("Absent a concession  by the Government  that the claims are valid . . . a validity determination has to be made before plaintiffs could recover."); *Hafen*, 30 Fed. Cl. at 473; *Bayshore Res. Co.*, 2 Cl. Ct. at 637; *Freese v. United States*, 221 Ct. Cl. 963, 964 (Fed. Cl. 1979).

If an examiner finds that there is no discovery which would support exploration and mining, BLM institutes a mining contest, an administrative proceeding by which the Department of the Interior invalidates a claim. *See* 43 C.F.R. § 4.451-1 (2011); *Cook*, 85 Fed. Cl. at 824. The government may initiate an administrative contest proceeding "for any cause affecting the legality or validity" of mining claims within federal ownership. 43 C.F.R. § 4.451–1; *Cook*, 85 Fed. Cl. at 823-24. Such power includes the right to file an administrative contest proceeding if the government finds that the mining claim does not in fact contain a discovery of valuable mineral deposit or that the minerals within the claim are not locatable under the Mining law. *Id.* at 824 (citing *Cameron v. United States*, 252 U.S. 450, 461). The government may even contest an unpatented mining claim located for uncommon variety minerals that at one time were locatable but due to changed circumstances no longer have the "distinct and special value" needed to support the uncommon variety designation.[3] *Id.* (citing *Copar Pumice Co. v. Bosworth*, 502 F. Supp. 2d 1200, 1215–16 (D.N.M. 2007)). In *Davis v. Nelson*, the Ninth Circuit compared administrative contests to an equitable proceeding to clear title:

> The 'location' of a mineral claim upon the public lands of the
> United States is, in effect, a unilateral act by the locator. It

---

[3] Congress passed the Common Varieties Act of 1955, 30 U.S.C. § 601 *et seq.*, which removed deposits of "common varieties" such as sand, stone, gravel and pumice from the application of the General Mining Law, and made these materials subject to sale under the conditions for disposal which are set out in the Act. *Copar Pumice Co., Inc. v. Bosworth*, 502 F. Supp. 2d 1200, 1204-05 (D.N.M. 2007), *aff'd sub nom. Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780 (10th Cir. 2010). Minerals are excluded from the Common Varieties Act if the mineral deposit has some property "giving it distinct and special value." *Id.* at 1204. Block pumice is one of these exclusions from the classification as a common variety mineral. 30 U.S.C. § 611 (2011); *Id.*

indicates that, in his opinion, there are minerals upon the land which are susceptible of profitable exploitation. That opinion may, of course, be, upon examination by less optimistic persons, regarded as ill-founded. If it is, the Government must have the right to clear the title and the right to the possession of its land from a useless and annoying encumbrance.

*Davis v. Nelson*, 329 F.2d at 846 (quoting *Mulkern v. Hammitt*, 326 F.2d 896, 897 (9th Cir. 1964)).

The test to qualify a valuable mineral deposit is not merely physical presence of a mineral, but the "prudent person test," which states that the discovered deposits must be of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *Hafen,* 30 Fed. Cl. at 473 (citing *Chrisman v. Miller*, 197 U.S. 313, 322, 25 S. Ct. 468, 49 L. Ed. 770 (1905); *Cameron*, 252 U.S. at 459)). The complementary "marketability" test is implied in the application of this test, and evaluates whether the mine can be operated and minerals sold at a profit. *Coleman*, 390 U.S. at 602 (stating "[the marketability test] identif[ies] with greater precision and objectivity the factors relevant to a determination that a mineral deposit is 'valuable'" and describing it as a "logical complement to the 'prudent-man test'"); *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074 (9th Cir. 1999); ("The supplemental marketability test requires a showing that the mineral deposit can be extracted, removed, and marketed at a profit."). This requires consideration of both the cost of extraction and local demand. *See Melluzzo v. Morton*, 534 F.2d 860, 864 (9th Cir. 1976). Since value is judged from a current market perspective, a discovery once made, can be lost through changed market conditions. *See Mulkern*, 326 F.2d at 898.

When contesting a mining claim, the Government bears the burden of establishing a prima facie case that the claim is invalid. *McKown*, 2012 WL 5423863, at *2 (citing *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074–75 (9th Cir. 1999)). A prima facie case is established when a Government mineral examiner gives an expert opinion that he or she examined the claim, and found insufficient values to support a finding of discovery. *See United States v. Mansfield*, 35 IBLA 95, 99 (1978). The claimant must then establish by a preponderance of the evidence "that a valuable mineral deposit has been discovered." *Lara v. Sec'y of the Interior*, 820 F.2d 1535, 1542 (9th Cir. 1987). *See McKown*, 2012 WL 5423863, at *14 (upholding Interior Board of Land Appeals' ("IBLA") finding that claims were invalid where Board properly relied on testimony of Forest Service expert mineral examiners and mineral reports, and Government presented economic evidence that the exposed quartz was not a valuable mineral discovery). Thus, while the Government bears the initial burden, it is the claimant, not the Government, who bears the ultimate burden of persuasion concerning the validity of the claims. *Id.* at *2. A party to a case adversely affected by a decision at the Office of Hearings and Appeals may appeal to the IBLA. *See* 43 C.F.R. § 4.410 (2011).

7

The Department of the Interior is the most eligible voice to pronounce upon the validity of mining claims, however judicial review is available in district court pursuant to the Administrative Procedure Act. *See Humboldt Placer Mining Co. v. Sec'y of the Interior*, 549 F.2d 622, 624 (9th Cir. 1977) (agreeing with IBLA's finding that mining claims were not valid ); *Hoefler v. Babbitt*, 952 F. Supp. 1448, 1458 (D. Or. 1996), (upholding IBLA decision pursuant to the arbitrary and capricious standard of the Administrative Procedure Act), *aff'd*, 139 F.3d 726 (9th Cir. 1998); *Alaska Limestone Corp. v. Hodel*, 614 F. Supp. 642, 650-51 (D. Alaska 1985) (finding ALJ and IBLA decisions supported by substantial evidence, and granting summary judgment for Government on plaintiff's challenge of administrative determination). This Court generally does not entertain such a review,[4] and where appropriate, stays such cases so that the decision can be referred to the BLM. *See Freeman v. United States*, 83 Fed. Cl. 530, 533 (2008) ("The BLM has primary jurisdiction to determine the validity of mining claims; remand to the BLM for this purpose therefore necessitated a stay of proceedings in this Court."); *Payne*, 31 Fed. Cl. at 711-12 ("Congress has given the Department of Interior the power in the first instance to inquire into the validity of mining rights claimed against the Government."); *Bayshore Res. Co.*, 2 Ct. Cl. at 632 (finding United States Court of Federal Claims has no jurisdiction to set aside DOI determinations declaring unpatented mining claims null and void).

### C. Parties' Arguments

Plaintiffs advance two arguments, first that the Government should be equitably estopped from arguing that they do not have a property interest, due to the inconsistent conduct of allowing them to mine in an area withdrawn from mineral entry. Pl.'s Mot. for Partial Summ. J. on United States' Sixth Aff. Def. 7-8. Because rights cannot be acquired on land that has been withdrawn, plaintiffs argue that by authorizing their mining operation, BLM has necessarily validated their mining claims. *Id.* Plaintiffs' second argument asserts that *res judicata* bars the Government from re-litigating what was already decided via the settlement and dismissal of the contest proceeding. *Id.* at 9-12. Citing the Federal Circuit's decision in *Ford-Clifton* for the proposition that dismissal based on a settlement constitutes a final judgment on the merits, plaintiffs contend that the settlement and dismissal of the mining contest operates as a similar bar to re-litigating the validity question. *Id.* at 10; *Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011).

The Government responds that plaintiffs have established none of the elements for equitable estoppel, which imposes a heavy burden to assert against the United States. Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. 8-9. Additionally, it argues that nothing in BLM's regulations constrains its ability to

---

[4]*But see Skaw v. United States*, 13 Cl. Ct. 7, 29-40 (1987), *aff'd*, 847 F.2d 842 (Fed. Cir. 1988) (on remand from vacated summary judgment, court itself examined the record and concluded the evidence did not establish that a valid discovery had been made).

authorize mining in the absence of a validity examination. *Id.* at 9-10. In addressing plaintiffs' *res judicata* argument, the Government states that *res judicata* is improper because the contest proceeding did not end with a "final judgment on the merits" and BLM never stipulated as to the discovery of valuable mineral deposits or that plaintiffs had a compensable property interest. *Id.* at 12. Rather, the parties resolved the matter by granting plaintiffs permission to mine, conditioned on terms that would not be present had they achieved success on the merits in the mining contest. *Id.* 12-13. Finally, the Government distinguishes the settlement in *Ford-Clifton*, which was a "full and complete settlement of all issues in the appeal" with the settlement agreement here, which is silent on the issue of whether plaintiffs made a discovery of a valuable mineral deposit. *Id.* at 14.

### D. *Res Judicata*

The doctrine of *res judicata* "prevents a party from re-litigating the same claims that were or could have been raised [in a prior proceeding]." *Goad v. United States*, 46 Fed. Cl. 395, 397 (Fed. Cl. 2000) (quoting *Case, Inc. v. United States*, 88 F.3d 1004, 1011 (Fed. Cir. 1996)). For *res judicata* purposes, a "claim" has been defined to cover all the claimants' rights against the particular defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. *Bayshore Res. Co. Inc.*, 2 Cl. Ct. at 635 (citing *Container Transport Int'l, Inc. v. United States*, 199 Ct. Cl. 713, 717 (1972)). When the doctrine is applied, not only does a final decision on the merits bar a subsequent action on the same claim, it also precludes subsequent actions based on a part of the same claim or any issues which were not but could have been raised as part of the claim. *Bayshore Res. Co. Inc.*, 2 Cl. Ct. at 635 (citations omitted).

*Res judicata* serves the public interest by relieving the parties of the cost and vexation of multiple lawsuits, conserving judicial resources, and, by preventing inconsistent decisions, encouraging reliance on adjudication. *Carson v. Dep't of Energy*, 398 F.3d 1369, 1375 (Fed. Cir. 2005) (citation omitted)). *Res judicata* applies when "(1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Payton v. Dep't of Homeland Sec.*, 300 F. App'x 890, 892 (Fed. Cir. 2008) (quoting *Carson*, 398 F.3d at 1375).Whether a particular claim is barred by *res judicata* is a matter of law, and is thus amenable to resolution on summary judgment. *See Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006); *Sabersky v. Dep't of Justice*, 61 Fed. App'x 676, 677 (Fed. Cir. 2003).

The application of *res judicata* is not confined to judgments issued by courts. "[W]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata*

to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966) (citations omitted); *Safir v. Gibson*, 432 F.2d 137, 143 (2d Cir. 1970). *See Ford-Clifton*, 661 F.3d at 660. In addition to providing repose, this "protect[s] a successful party from being vexed with needlessly duplicitous proceedings." *Safir*, 432 F.2d at 143. This Court has previously applied *res judicata* to prevent parties from re-litigating the validity of mining claims after an administrative mining contest. *Bayshore Res. Co., Inc.*, 2 Cl. Ct. at 635-36 (finding *res judicata* barred plaintiff's claims, which essentially sought to re-litigate the validity of mining claims previously declared null and void by Interior Board of Land Appeals, and upheld on judicial review).

"[A]n earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a *res judicata* analysis." *Ford-Clifton*, 661 F.3d at 660 (citing *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989)). In this case, the ALJ heard thirteen days of evidentiary hearings in proceedings lasting over six months before the parties reached their settlement. On May 19, 2008, the ALJ granted the parties' joint motion to dismiss Contest No. CACA 48717, attaching "a fully executed Settlement Agreement, which serves to resolve all issues on appeal in this docket." The Government is correct that the settlement agreement is silent with respect to the existence of a property interest, however the entire purpose of a mining contest is to challenge the "legality or validity of claims" and these issues are necessarily included in the resolution of "all issues on appeal in this docket." *See* 43 C.F.R. § 4.451–1 (2011); Pl.'s Ex. 6. Indeed, the opening sentence of the agreement itself reads that it "fully resolves Mineral Contest CACA 48717." Pl.'s Ex. 1. The settlement resulted in the dismissal of the mining contest, and established plaintiffs' right to mine those claims they did not forfeit, albeit under certain conditions, without further contests by BLM. Like the agreement in *Ford-Clifton*, the Court finds this dismissal constitutes a final judgment on the merits for *res judicata* purposes. *See Ford- Clifton*, 661 F.3d at 660; *Bayshore Res. Co. Inc.*, 2 Cl. Ct. at 635-36.

Furthermore, as a practical matter, were the Court to require plaintiffs to prove a property interest at trial, the case would likely need to be stayed and remanded back to DOI's Office of Hearings and Appeals, only to resume precisely the same course of hearings the parties previously settled.[5] *See Best*, 371 U.S. at 338-40 (upholding the district court's granting of a stay of the proceedings until the BLM could determine the validity of the plaintiff's mining claims); *Freeman*, 83 Fed. Cl. at 530 (remand to the BLM for determining the validity of

---

[5] In *Skaw v. United States*, 2 Cl. Ct. 795, 802 (1983), this Court granted summary judgment for the Government, finding plaintiffs did not possess a valid property interest in unpatented mining claims after considering, *inter alia*, evidence such as the IBLA's decision declaring plaintiff's mining claims null and void on grounds of abandonment. The Federal Circuit reversed, finding the evidence insufficient to deny a property interest existed, since the discovery of a valid mineral deposit was never examined in the IBLA's decision, which based its finding on plaintiff's abandonment of the claims. *Skaw v. United States*, 740 F.2d 932, 936-37 (Fed. Cir. 1984). Unlike that case, here, the question of whether plaintiffs discovered a valuable mineral deposit was the exact issue brought before the ALJ and litigated until its settlement and dismissal.

mining claims necessitated a stay of proceedings); *Payne*, 31 Fed. Cl. at 712. The policy behind *res judicata* does not support this result. In the instant circumstances, where the parties have already had a fair opportunity to litigate the validity question, have jointly moved to dismiss the contest, and plaintiffs have emerged with rights to mine under a valid settlement agreement, the Court finds *res judicata* prevents the Government from asserting their lack of a compensable property interest defense and re-litigating the validity of plaintiffs' claims.

### E.     Equitable Estoppel

Plaintiffs also argue that the Government is estopped from arguing that they do not possess a property interest, by its inconsistent action in settling the contest. Since the Court has decided summary judgment for plaintiffs is proper on *res judicata* grounds, it need not address the parties' estoppel arguments.

### III.     Conclusion

For the above-stated reasons, plaintiffs' "Motion For Summary Judgment On United States' Sixth Affirmative Defense" is GRANTED. Plaintiffs' property interest in the unpatented mining claims has been established as a matter of law.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**

11